This is a suit by plaintiff against the defendant under the Workmen's Compensation Law of this State, Act No. 20 of 1914, as amended, for permanent total disability as a result of injuries received by plaintiff on January 2, 1946, while in the course and scope of his employment. The defendant paid plaintiff compensation at the maximum rate of $20 per week from the date of the injury, January 2, 1946, through July 22, 1946, when he was discharged by the attending physician and returned to the employment of the defendant. He worked until May 15, 1947, when his services were terminated due to the reduction of the forces by defendant. Shortly thereafter he instituted this suit, alleging that he still suffered weakness and pain in his back of such a nature as to permanently and totally disable him from resuming his former employment or doing work of any reasonable character. The defendant, in its answer, avers that plaintiff had fully recovered from his injuries at the time it stopped paying compensation on July 24, 1946, when plaintiff returned to his former employment and resumed all duties of his former employment. The sole question presented in the case is the duration of the plaintiff's disability.
After a trial of the case on this issue, the trial court, on December 4, 1947, rendered judgment in favor of defendant, rejecting plaintiff's demand, at his costs. In due course, plaintiff filed an application for rehearing, and on April 13, 1938, the application was denied. Thereafter, plaintiff filed a motion to re-open the case for the taking of additional evidence, which motion was granted. After rehearing, the trial court rendered a judgment in favor of plaintiff, setting aside its former judgment and awarding plaintiff compensation at the rate of $4.99 per week for a period not to exceed 300 weeks, less the compensation payments made between January 2, 1946, and July 22, 1946, and beginning one week after the last compensation payment was made in July, 1946, with legal interest on each payment from its due date until paid, and all costs. From this judgment plaintiff has appealed. Defendant has answered the appeal, praying that the judgment be reversed, and that plaintiff's suit be dismissed. In the alternative, defendant prays that it be given further credit against compensation for the number of weeks from July 25, 1946, to May 18, 1947, the period during which plaintiff was in defendant's employment and for which he was paid his full salary.
Plaintiff was employed as a driver of a truck in which a heavy crane was mounted, *Page 910 
the combination of the two weighing approximately twenty tons. His job was to move the crane truck from place to place in accordance with instructions of the crane operator. The crane operator sat in a cab on the crane and operated the crane therefrom. He directed the truck driver where to locate the truck so as to place the crane in a proper position. On the day of the accident and injury, the truck was stationary and plaintiff was sitting on the back of the truck. Without warning, plaintiff was caught by the moving or turning crane between it and the truck, and as a result suffered fractures of the second, third, fourth, fifth, sixth, seventh, eighth, ninth and eleventh ribs on the right side in the posterior axillary region, and the displacement of the left end of the clavicle. He also suffered bruises of the chest and apparently one of the broken ribs punctured the right lung and caused it to collapse and also caused the lung along with some of the other internal organs, to be displaced, particularly the heart being pushed to the left side. The plaintiff was in a critical condition after the accident and was confined to the hospital from January 2, to February 6, a period of thirty-five days, then was confined to his home for a longer period. On July 22, 1946, he was discharged by defendant's physician as being able to return to work. He was paid compensation up to July 24, 1946. On July 25, 1946, he returned to his former employment.
According to the medical evidence, regardless of the fact that plaintiff received serious injuries, there is no doubt that excellent results were obtained. There was no bone pathology. The ribs have all healed in almost perfect alignment, and all other parts of plaintiff's body have been restored to normal, except the dislocation of the end of the left clavicle, which causes the plaintiff no disability. The complaint of plaintiff is that he still suffers pain and discomfort in the upper dorsal region of his back, particularly when he attempts physical exertion of any kind for appreciable periods of time and for that reason he contends that he is totally and permanently disabled.
Dr. Voss, of the City of Baton Rouge, had plaintiff under treatment immediately after the accident, that is, January 2, 1946, and continuously to July 16, 1947, inclusive. On July 16, 1946, the last examination of plaintiff, the doctor states that the plaintiff complained "of pain only when he got up in the morning, ordinarily he would have a stiffness and some discomfort in his back, but as the day wore on and his blood got to circulating, he felt better". He found "no objective symptoms that could account for these pains". It was his medical opinion that the plaintiff had fully recovered from his injuries and could return to his former work. He discharged the plaintiff as being capable of resuming his former employment. On the witness stand, the doctor reaffirmed his former medical opinion and states that he sees no reasons why plaintiff should not do hard, laborious work.
During the course of his recovery the plaintiff was sent at the expense of the defendant to Dr. George Battalora, an eminent orthopedics surgeon of New Orleans. He examined the plaintiff on three occasions, first on March 13, 1946; second, on May 3, 1946, and third and last, on July 3, 1946. The doctor made a report on each examination. His first report discloses that plaintiff was complaining of "pain and a straining sensation in the upper lumbar spine. It is worse after walking. He cannot lie on the left side on account of pain at the left sterno-clavicular joint. He notes a pulling sensation here on motion of the shoulder. There is soreness in the lower portion of the chest on each side on arising, but this disappears after use." The doctor found that the plaintiff was making an excellent recovery from the effects of his injury. He was of the opinion that plaintiff's back condition could be improved by the wearing of a lumbo-sacral support and recommended postural exercises to tune up the muscles of the abdomen. He thought plaintiff would end up with practically no disability and that he should be able to return to work within a further period of four to six weeks. On the next examination on May 3, 1947, Dr. Battalora's report shows that plaintiff's *Page 911 
condition was: "He complains of some back pain referred to the upper lumbar region and to the lumbo-sacral junction. The back feels tired. The pain is aggravated by bending. There was no radiation of the pain. In certain positions of the left arm he notes sharp pains referred to the left sterno-clavicular joint. This pain is of a very short duration. In the morning on arising he notes soreness across the lower portion of his chest anteriorally." He found that the plaintiff's weight had increased from 135 pounds to 156 pounds and that his general condition had improved over that noted previously. Spine motions were normal in range. All shoulder motions were normal. No rib disalignment was noted and the expansible power of the chest appeared to be normal. The doctor's opinion is stated thusly: "This man is making excellent progress to recovery. He still complains of some pain in his back. This is his major difficulty. I would advise him that he be fitted with a lumbo-sacral support. (This is the same advice previously given which evidently had not been followed.) I have given him an order to the Surgical Supply Company for this appliance. I believe this man should be able to return to work in a very short period of time and I would estimate that two weeks should be enough to get him back. He will have to wear his belt for several weeks after returning to work. I do not believe he will have any residual disability." On his last examination, July 3, 1946, the plaintiff reported that since his prior examination he had been wearing a wide lumbo-sacral support and he reports relief with the support. The plaintiff complained of occasional pain referred to the low dorsal region and also some pain referred to the left buttocks. The doctor's report states: "This man's general condition is excellent. He handles his joints well, and moves about without any apparent discomfort. All motions of the spine were executed in a normal manner without any apparent difficulty. He likewise stated that he had no pains on motions. Reflexes were normal in both lower extremities. Shoulder motions were normal." Opinion: "It is my opinion that this man has recovered sufficiently from this injury as to return to work. I have advised him to continue wearing his support for four to six weeks. The only positive finding in this case at present is the slight swelling noted about the left sterno-clavicular joint. This is most probably the result of a sub-laxation received at the time of injury. I believe that disability which this man has as a residual is no more than 5% loss of use of the left arm."
In his testimony, Dr. Battalora reaffirmed his original opinion that on July 3, 1946, plaintiff had recovered from his injuries and that he was able to return to his former work. He was informed of defendant's contention that plaintiff had returned to defendant's plant in July, 1947, and had resumed all the duties of his former employment and that in August, 1947, plaintiff, after passing a pre-employment examination obtained employment with the Permanente Metals Corporation in Baton Rouge, and was asked the question: "Would this testimony, if considered by the Court as credible, have the effect of substantiating your findings?" To which he answered: "Yes it would." The doctor further testified that he made no finding of fibrositis in the upper region of the back and/or neck. The doctor was positive that the only complaint of pain by the plaintiff was in the low back, or in the injunction of the lumbar and the dorsal spine. No complaints of pain were made in the cervical region or the upper dorsal region, this being the place where plaintiff makes his most serious complaint at this time.
The record discloses that plaintiff was hired as the truck driver of the crane truck. He belonged to a local union. He was classified as an "oiler". However, the preponderance of the testimony is that his duties were that of crane truck driver, At the time of the accident, according to the testimony of Edgar Mizell, a fellow employee, who was assigned to the same crew of which plaintiff belonged, he, Mizell, was the "oiler" and plaintiff was the driver. Plaintiff at times performed the duties of oiler, and also helped in the moving of tank heads and unloading cars. These services were performed voluntarily. There is no doubt, however, that these *Page 912 
tasks were not any heavier than that of crane truck driver.
When plaintiff, on July 24, 1946, returned to his employment with the defendant company, he was again given the classification of "oiler" and his duties were crane truck driver, and oiler. The additional duty as oiler was assigned to him on account of a reduced force. He testified that he did those duties while suffering pain, and that he tired easily. He is corroborated by some of his fellow employees who testified that plaintiff complained of pain. Some of his fellow employees, including his superintendent, testified that plaintiff never complained of pain or of tiring easily. The fact remains that he did those duties faithfully and satisfactorily until his termination on May 18, 1947, on account of reduction of defendant's force. On that score, it cannot be said that a preponderance of the evidence exists in favor of plaintiff. We must look for corroborating circumstances, either in the medical evidence or other testimony.
According to plaintiff, he consulted, after he had returned to his employment with the defendant, Doctors Lewis Godfrey and Bannerman, of the City of Baton Rouge. He states that he had hurt his back while working at defendant's plant; that Dr. Lewis strapped his back and that Dr. Godfrey removed the tape; that both Doctors Godfrey and Bannerman suggested that he put boards under the mattress of the bed in which he slept. It is to be noted, however, that defendant has had no knowledge of the particular accident of which he complained to those doctors. He has failed to call these doctors as witnesses in this case. We have only his testimony that he was examined by these doctors.
Plaintiff further testified that after his return to work he consulted Dr. Voss, defendant's attending physician, for treatment of his back. In that he is corroborated by the testimony of Dr. Voss, who testified that, according to his records, the plaintiff on November 23, 1946, and December 22, 1946, came to him complaining of pains between his shoulders and in his shoulder and neck. He prescribed for the plaintiff on both occasions. He states that the medicine he prescribed was for neuritis and sedatives for pain resulting from neuritis.
Plaintiff also testified that he almost daily visited the first aid station for heat treatment to his back. In that, he is corroborated by the testimony of Dr. Voss who admits that plaintiff informed him, on his two visits to the doctor's office, that he was getting heat treatments at the first aid station. One of his fellow employees testified that he saw plaintiff receiving this treatment.
On January 6, 1947, between the time that plaintiff returned to work and his termination, plaintiff visited Dr. T. Jeff McHugh, a well known and eminent physician of the City of Baton Rouge, complaining of tenderness over the upper back and posterior neck, stating that when he is fatigued the pain extends down to the lumbo-sacral region. The doctor, after examination of the plaintiff, came to the conclusion that "It, is probable that he did have a considerable injury of his chest and that it is probable that he had some back injury which was overshadowed by the chest injury and did not become symptomatic until he was out of bed. It is probable that he does have some fibrositis of the muscles of the neck and upper back which may permit him to work, but which would cause him to fatigue and ache with less work than a normal back would stand. It is my opinion that he is able to do reasonable work but his endurance is less than before the accident. I would estimate a permanent disability of fifteen to twenty per cent." Fibrositis, as defined by the doctors who testified in this case, is the deposit of fibrous tissues in the muscles. The doctor states that he attributed the painful condition of which plaintiff complained to fibrositis and made his diagnosis on the history of the injury and plaintiff's complaint. "We have no means of proving it or disproving it except by taking a biopsy of the muscle to determine the fibrous content, but, of course, with the history of trauma and with the complaint of pain we assume that to exist, although we are dependent upon the individual's honesty as to whether or not he actually *Page 913 
does have pain." A biopsy was not taken. The doctor states the plaintiff cooperated with him. The plaintiff did not in any sense appear to be exaggerating his symptoms; in short, plaintiff appeared honest. Dr. McHugh was of the opinion that due to the degree of his injury, plaintiff could easily have some permanent residual disability. The doctor was of the opinion that plaintiff may be able to do ordinary work; although having some discomfort, he could even do some heavy work for short periods, but he was of the opinion that plaintiff would fatigue sooner than a normal individual. He was of the opinion that he would have some aggravation of his pain.
As previously stated, plaintiff's services were terminated on May 18, 1947. On June 16, 1947, he filed this suit. Thereafter, he sought employment with the Permanente Metals Corporation, an industrial company at Baton Rouge. On August 11, 1947, he was given a pre-employment examination by Dr. McVea, a Baton Rouge physician. At that examination, plaintiff told the doctor that he had had no accident and was not suffering from any physical ailments whatever and that he was normal in every respect. The doctor examined his eyes, ears, mouth and lungs; the abdomen, particularly with reference to the existence of a hernia, the heart and lungs; the genito-urinary system; examination for varicose veins, and a general examination for old injuries and disabilities, with particular reference to back complaints; the blood pressure was taken. In short, it was a thorough examination. The doctor, as a witness, states that he satisfied himself as to plaintiff's physical condition, particularly with reference to his back and his chest and as to his condition for employment. He recommended plaintiff for employment. On October 13, 1947, he was given a termination examination by the same Dr. McVea. At that examination, he told the doctor of the accident of January 2, 1946, and of having his ribs broken in that accident. He also complained of pain in the right side of his chest at times on breathing, in a certain position. His examination was as thorough as the first examination, supra. The doctor testified that disregarding plaintiff's complaint, he found plaintiff in a satisfactory physical state for employment; he further found no difference of his back and chest at this examination than he did at the first examination. In other words, he found plaintiff able to do hard manual labor. Plaintiff had been hired by the Permanente Metals Corporation as an oiler and had performed his work to the satisfaction of this employer.
Mr. Richard Hill, a fellow employee, and Henry McFerguson, plaintiff's foreman, testified that plaintiff while so employed never complained of any physical ailments and showed no signs of disability. It appears that the Permanente Metals Corporation found out about plaintiff's pending suit. Plaintiff was examined, for termination, by Dr. McVea on October 13, 1947. At that examination, knowing that he was being terminated, plaintiff made a full disclosure of the accident of January 2, 1946, and the resulting injuries, and stated that he had pains in his right chest and that his back and hips were stiff ever since the accident. The plaintiff freely admitted that he did not tell Dr. McVea the truth because he needed and wanted a job and therefore he purposely withheld the information.
Under these facts, under a well considered written opinion for judgment, the learned trial judge, in the first instance, came to the conclusion that the plaintiff was not disabled from resuming his former employment or work of a reasonable character. He correctly states that the test of disability is whether an employee can discharge his duties of the occupation he held at the time of the injury. The trial judge states: "He has conclusively demonstrated his ability to do this by working and doing his former job and working for the Permanente Metals Corporation as an oiler without any particular trouble." In his second well considered written reasons, after analyzing the testimony offered on the reopening of the case, the trial judge states: "A summation of the above testimony indicates that the plaintiff did have some pain and discomfort in his back after returning to work in July of 1946. However, as pointed out in the original opinion, *Page 914 
he did his job successfully for approximately ten months, was laid off in a general lay-off, and thereafter secured other full time employment which he did successfully. Thus, this Court is clearly of the opinion that plaintiff has failed to establish permanent and total disability." We find him eminently correct in his conclusions.
However, the learned trial judge, being of the opinion that some residuary pain and discomfort existed for an indefinite time, and basing this on the testimony of Dr. McHugh, came to the conclusion that plaintiff was entitled to compensation under Section 8, subsection 1(c), of the Compensation Statute, Act No. 20 of 1914, as amended, Act No. 242 of 1928, p. 357, and granted him compensation at the rate of $4.99, being 20% of 65% of $38.40 (his weekly wages). In this, we are not in accord. The testimony of Dr. McHugh is based entirely on probability and too indefinite to warrant an award. Furthermore, the testimony of Drs. Voss, Battalora and McVea is far more certain than that of Dr. McHugh, as to the plaintiff being able to do his work.
Furthermore, in this case, the wages earned by plaintiff after the accident for the ten months he was employed by the defendant and for the two months he worked for the Permanente Metals Corporation were more than those previously. It must be borne in mind that he was not discharged by either corporation because he had any residuary pains and discomfort, he having given very satisfactory work.
However, if Subsection 1(c) is applicable, we find that sixty-five per cent. of the difference between the wages at the time of injury and wages which the injured employee is able to earn thereafter during the disability, would result in nothing.
Furthermore, if plaintiff is or has been suffering from pains and discomfort, plaintiff has failed to satisfactorily prove that such pains and discomfort are due or is a residuary of the accident of January 2, 1946. It may as well be the result of the accident for which he privately consulted Drs. Lewis, Bannerman and Godfrey. In compensation cases, plaintiff is required to prove his case as in all other suits. He must make his case a legal certainty, to make it probable is not enough. Plaintiff has failed to establish by a preponderance of the evidence that he is totally and permanently disabled from doing work of a reasonable character or discharging the duties of the occupation he held at the time of injury, or even that he is suffering from any partial compensable disability.
For these reasons assigned, the judgment appealed from is annulled, avoided and reversed and it is now ordered that plaintiff's suit be and the same is hereby dismissed at his costs.