DORE, Judge.
This is a suit under the Workmen’s Compensation Act, Act No. 20 of 1914, as amended, wherein it is alleged that on and prior to July 14, 1948, the plaintiff was employed by defendant at its sawmill at De-Quincy, in Calcasieu Parish, Louisiana, in work commonly known as “dogging” and that while so working on the date aforesaid, he was very suddenly, violently and accidentally struck in the stomach with a large slab that had been thrown in his direction by what is known as the “steam nigger”; and that as a result thereof, he “suffered a rupture, a strained and sprained back, a disturbance of the spinal column and other internal injuries”, and that thereafter it was necessary for him to undergo an operation, and that as a result, he has remained totally and permanently disabled from doing work of any reasonable character. The petition shows that his weekly wage was Thirty-Five ($35.00) Dollars per week and that he received compensation at the rate of Twenty Dollars ($20.00) per week from the date of his injury to September 14, 1948, a total of eight weeks, but that he has been refused compensation since September 14th, and moreover, has been forced to expend Three Hundred Dollars ($300.00) for medical expenses. He prays for compensation at the rate of Twenty Dollars ($20.00) per week, plus legal interest on each instalment from its maturity, and Three Hundred Dollars ($300.00) for medical expenses less the eight weeks compensation heretofore paid.
The defendant admits the employment and further admits that the compensation rate of Twenty Dollars ($20.00) was correct. In its answer, defendant sets forth that it has paid to plaintiff the sum of One Hundred Sixty-Five Dollars ($165.00) cash and compensation checks, by reason of plaintiff’s disability resulting from his injury and that the last compensation check was paid on September 23, 1949 (1948). In further answering, defendant shows that plaintiff returned to work on August 9, 1948 and worked for five consecutive days through August 13, 1948; that he also worked on August 16, 1948, and on August 18, 1948, and was paid by defendant by payroll checks for the said days he worked; that he did not return to work again and was paid thereafter by insurance checks. The answer further sets forth that plaintiff failed to call for his compensation check on September 30, 1948, on which date said check was payable, or at any subsequent date, and that plaintiff in effect left his home at defendant’s lumber camp on September 25th without complaining and without any request for further compensation; that defendant has always been willing, and is still willing, to pay any and all compensation actually due plaintiff under the laws of the State of Louisiana.
In addition to its answer as summarized above, the defendant company filed a petition setting forth that plaintiff claimed that he was totally and permanently disabled, which was denied by defendant; that defendant has repeatedly requested plaintiff to submit to a physical examination to determine his condition, and that plaintiff has failed to do so, and that therefore, the defendant desired and prayed for a rule to show cause why plaintiff should not submit himself to a medical examination. The rule as prayed for was issued on March 3, 1949, and an answer thereto was filed on April 5, 1949, but apparently no hearing was had thereon, and it was referred to the merits, as it appears from the record that the case went to trial on the merits on April 20, 1949.
After t'he trial on the merits, Judge Hood, for written reasons assigned, rendered judgment in favor of the defendant, dis *371 missing the plaintiff’s demands at his costs. From this judgment the plaintiff has appealed.
It is admitted that the plaintiff was employed as alleged and sustained the accident alleged on July 14, 1948, and that the correct rate of compensation is Twenty Dollars ($20.00) per week, if he is entitled to compensation. The defendant denies, however, that the injuries of which plaintiff now complains resulted from the accident.
The only direct testimony introduced by plaintiff is his own testimony and that of Dr. James N. Seale of Jasper, Texas.
Plaintiff states that he is thirty-three years of age and that at the time of his injury he was engaged in “dogging”, which he admits is not heavy work. He further states that at the time of his employment he had an inguinal hernia, or hernias, which he had had since childhood. He testifies, however, that as a result of being struck in the pit of the stomach with a severe blow, he fell over backwards on a banister, and as a result, suffered a rupture in the upper part of his abdomen, about the mid-line and above the navel, referred to by the physicians as an epigastric hernia, and also suffered an injury to his back; that later he was operated on for the hernia, but that the operation failed to correct the condition. In other words, his claim is not based on the inguinal hernias which he had prior to the accident, but on this alleged new hernia and on the injury to his back. It is shown that the reason he was given light work at the sawmill was .because of the inguinal hernias which he had prior to the accident.
It is shown that immediately after the accident he was taken to the Douglas Qinic in DeQuincy, where he remained for about one week, and that while there, Dr. Bishop made several attempts to examine him, but was unable to do so because plaintiff was not cooperative; that he left the clinic on his own accord and without the consent of the doctors in charge of it;, that he returned to work for defendant on August 9th and worked for approximately five days cleaning up around the sawmill; that thereafter, he complained of pain and that defendant then sent him to Dr. Drez for examination and treatment.
Dr. Drez testifies that he diagnosed his condition as a congenital epigastric hernia, which he felt was unconnected with the accident, but in any event, he recommended, and with the consent of the defendant, performed an operation on the plaintiff to repair this hernia. It is shown that the operation was performed on September 15, 1948, and .that plaintiff was discharged from the hospital on September 21, 1948, at which time .the operation appeared to be entirely satisfactory. Dr. Drez states that he advised the plaintiff to “take it easy” for some eight or nine weeks thereafter, and that he did not see the plaintiff again until one week before the trial. In describing the operation, Dr. Drez states that he was assisted by Dr. Bishop; that they found a small round hole in the fascia under the skin through which hole a' little piece of fatty tissue was protruding and was held firmly in place by adhesions; that incisions were made above and below the fatty mass to free it and it was then pushed back in and thus reduced. His testimony and that of Dr. Bishop is that the only incision made was on the outer skin and that the peritoneum was not touched. He states that a few days before the trial he found that the overlapping of the fascia had pulled loose so that the plaintiff now has a potential hernia, but he is of the opinion that plaintiff is now better able to work than he was before the accident because the fatty tissue is now free and no nerves are involved.
The testimony of Dr. Drez is corroborated by Dr. Bishop and both doctors are of the opinion that the epigastric hernia in no way affects plaintiff’s ability to perform the work he was doing at the time of the accident or any other work of a similar nature. Both of these doctors deny that plaintiff ever complained of any injury to his back.
On the other hand, plaintiff’s doctor, Dr. Seale, testified that when plaintiff came to him for examination on October 10, 19-18, he complained of pain in his back and upper abdomen, and gave a history of the accident *372 which occurred at the sawmill on July 14, 1948, and the subsequent operation. At that time Dr. Seale found the operation to be an apparent success, hut upon subsequent examination several months later, he found a hernia in the anterior portion of the upper abdomen, which he diagnosed as an “inci-sional hernia”. He further testified that plaintiff has an intestinal obstruction caused by adhesions resulting from the operation, and in his opinion, plaintiff is not able to do any work requiring physical exertion because of this condition and danger of internal organs being forced through the hernia and becoming strangulated. Dr. Seale also found a condition in plaintiff’s back which he diagnosed as a myoma, a muscle tumor, and from an examination of X-ray pictures, he found a good deal of calcification in the lower back area, which he diagnosed as “hypertrophic arthritis of the fourth lumbar joint and the lumbo sacral joint”. It was his opinion that plaintiff had sustained a fracture of the vertebrae in this area at some time in the past, and that this fracture could have occurred as recently as July 14, 1948.
With reference to the latter part of Dr. Seale’s testimony, it must be noted that had plaintiff sustained a fracture of his lower back in his accident of July 14, 1948, it would seem that he certainly would have complained to Dr. Drez and to Dr. Bishop of severe pain in his back at that time. Also, it must be noted that had he sustained the severe fall on his back which is claimed in this case, certainly there should be some witness to corroborate his statement in that respect. It is admitted that he was struck in the stomach by a slab but the only statement we have with reference to his falling backwards on a banister is plaintiff’s own testimony. It is not shown that he was working alone in his duties of “dogging”, and on the contrary, it seems apparent that someone else was operating the carriage from which the slab was thrown in his direction.
The medical tetimony is somewhat contradictory because Dr. Drez and Dr. Bishop seem to be. of the positive opinion that the abdominal condition of plaintiff in no way affects his ability to work and does not create any danger. On the other hand, Dr. Seale seems to be of the opinion that the condition is dangerous and prevents plaintiff from engaging in physical exertion. We believe that the trial judge explains the contradiction by bringing out that Dr. Seale was unaware of the fact that in the operation there was only a skin incision with no disturbance of the peritoneum.
It is noted that the trial judge personally examined the plaintiff during the trial, and that he did find that plaintiff had in the upper part of his abdomen, about the mid-line and above the navel, a very slight bulging or protruding of the outer skin when plaintiff coughed, about the size of the end of a lead pencil. The trial judge also observed a mass or tumor about the size of an adult hand on his back, just below the shoulder blade and just to the right of his back bone.
It seems clear, therefore, that at the time of the trial the plaintiff had these two abnormalities, which possibly can be connected with his accident, or, in so far as the abdominal condition, with the operation. However, even if we conclude that they are connected with the accident, it does not appear that it has been proved that even these conditions render him disabled within the terms of the compensation act.
As observed by the trial judge:
“The plaintiff in this case, as in all other cases, is charged with the burden of proving his case by a preponderance of evidence. Powell v. American Employees Ins. [Co., La.App.], 14 So.2d 333; Gill v. Aetna Casualty Ins. Co. [La.App.], 23 So.2d 343; Hemphill v. Tremont Lumber Co. [La.App.], 24 So.2d 635.”
It may be observed in conclusion, that it is shown by the testimony of Dr. Drez that plaintiff was supposed to recuperate in some eight or nine weeks subsequent to the operation which he performed on September 15, 1948, and that his last compensation check was given on September 23, 1948. Therefore, the plaintiff is entitled to compensation for these eight additional weeks which he never received.
*373 For these reasons assigned, the judgment appealed from is hereby reversed and set aside. It is now ordered that there be judgment herein in favor of plaintiff and against the defendant, granting unto plaintiff compensation at the rate of $20.00 per week, beginning on September 23, 1948, for a period of eight weeks, with legal interest on each instalment from due date until paid. Defendant to pay all costs.
J. CLEVELAND FRUGE, Judge, sitting ad hoc.