68 So.2d 689 (1953)
ROBERTS
v.
M. S. CARROLL CO., Inc. et al.
No. 7972.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1953.
*690 Hudson, Potts, Bernstein & Davenport, Monroe, for appellants.
J. R. Dawkins, Farmerville, for appellee.
HARDY, Judge.
This is a compensation suit in which plaintiff claims the statutory allowances for permanent total disability from his employer and insurer. After trial there was judgment in favor of plaintiff against the defendants, in solido, ordering payments at the rate of $24.97 per week for a period of 400 weeks, less credits for sums paid, from which judgment defendants have appealed.
Plaintiff was employed by defendant, M. S. Carroll Company, Inc., as a swamper engaged in clearing timber from a right-ofway in Union Parish, Louisiana, when he sustained an accidental injury in the course of his employment. The accident happened at about the hour of 10:30 A.M. on October 4, 1951. Timber crews were engaged in the operation of power saws in cutting trees, and plaintiff was swamping on one of the saws operated at the time by two fellow employees, George Roberts and R. H. Butler. The saw was running low on fuel and plaintiff was engaged in attempting to locate a nearby can of fuel. George Roberts left his work on the saw to assist plaintiff in his search and his place was taken temporarily by the foreman of the woods crew, D. W. Hicks. Butler and Hicks began cutting a tree which, according to their testimony, was some six or eight inches in diameter at the butt, tapering upward to a height of twelve to fifteen feet, where it forked into two branches. As plaintiff was returning with the can of fuel to the point of operation the tree began to fall in his direction. Warned by a shout from Butler plaintiff observed his danger and attempted to avoid the falling tree, but, unfortunately, he tripped backward over a log and in falling to the ground was struck by one of the forked branches of the tree which was possibly some two or three inches in diameter. Plaintiff was struck a glancing blow on the head and the force of the blow to a considerable degree was minimized by reason of the fact that he was actually falling at the time of the impact.
While plaintiff testified that he was rendered completely unconscious by the blow and subsequently suffered as least one fainting spell, this testimony is conclusively controverted by both Butler and Hicks, who testified on behalf of defendants. Complaining of the blow to his head, plaintiff was almost immediately able to sit and then to stand. Despite the insistence of the foreman Hicks that he go immediately to a doctor, plaintiff refused and insisted on continuing on the job. Fearing that plaintiff might have sustained some injury, the foreman put him to the light work of measuring logs, which occupation he continued until noon. After the noon hour plaintiff insisted on returning, and actually did return, to the work of swamping, in which he continued until late in the afternoon. Plaintiff was taken back to Farmerville with the rest of the woods crew in the labor truck, and, upon arrival, was taken by his foreman Hicks to the clinic of Dr. Gregory. Both Hicks and Butler testified that they observed no outward evidences of any injury *691 to plaintiff with the exception of a superficial abrasion just about the hairline of his forehead. Dr. Gregory testified that plaintiff had sustained several abrasions on the head which seemed to have been in the nature of what are commonly called "brush burns". After treatment by the doctor and the taking of x-rays plaintiff went to his home, promising to return the next day for further examination. Thereafter plaintiff was under the treatment of Dr. Gregory for a period of several months, during which period the doctor estimated that he had seen plaintiff some 25 to 50 times.
Plaintiff was paid compensation by the defendant insurer at the proper rate of $24.97 per week for a period of twenty-six weeks following the accident.
In February, 1952, plaintiff suffered a bowel obstruction, for the correction of which condition a colostomy was performed. Admittedly, at the time of trial, plaintiff was totally and permanently disabled to do manual labor, but the defense is predicated upon the contention that this disability is due to the result of the very serious intestinal operation performed in February of 1952, and not to any effects of the assertedly slight traumatic injury to the head connected with the accident.
Specifically plaintiff complains of violent headaches of frequent recurrence, serious limitation of motion of the head and neck and continual pain in the left side of the head and neck and in the left shoulder.
The sole question here presented involves purely a conclusion of fact, to-wit: Does plaintiff's disability have a causal connection with and relation to a traumatic injury sustained in the accident of October 4, 1951?
On behalf of plaintiff the expert medical testimony of two competent and qualified witnesses, Drs. Gregory and Cutler, was tendered. Additionally, a letter of Dr. William Armistead briefly reporting the result of an examination of plaintiff, was admitted in evidence by agreement. The consensus of these three members of the medical profession is that plaintiff suffers from a traumatic encephalopathy. The most noticeable symptoms of this malady, as observed by these witnesses, were described as being a serious emotional instability, personality changes, a deterioration in memory, and in the power of concentration, a mental and physical fatigability, and lengthened association time. In addition to this diagnosis and the neurological symptoms noted, the testimony with reference to physical symptoms indicated a muscular fibrosis resulting in a stiffness and limitation of motion of the muscles of the neck and shoulder.
As opposed to this opinion there appears in the record the testimony on behalf of defendant of Drs. Kelly, Hamilton and Cannon, all of eminent standing and fully qualified by education, training and experience. It was the consensus of these experts, as a result of their examinations of plaintiff, that his condition could not be attributed to the employment injury. There is considerable testimony to the effect that the colostomy performed on plaintiff could have produced the conditions observed. Additionally there was testimony by defense witnesses to the effect that plaintiff, at unsuspicious times when he was not on guard, was able to affect a normal and natural movement of the head and neck. Particularly attention was called to the fact that there was no indication of any degree of atrophy which it was testified would normally result from the disuse of the muscular structure of the shoulder and neck.
We do not think any useful purpose could possibly be served by an attempt on our part to analyze in detail the highly technical testimony of the apparently equally balanced groups of expert witnesses. Frankly this court, composed of laymen, is unwilling, and, indeed, unable to assume the responsibility for the determination of a question which is concerned with a scientific and highly technical medical proposition with reference to which there appears to be a balance between irreconcilable and divergent opinions. We observe with sympathetic understanding the statement of the distinguished trial judge, the late E. L. Walker, as expressed in his written opinion:

*692 "The outcome of a professional combat of this type is usually, as it was in this case, a draw."
Under such circumstances it is essential that we turn to the lay testimony in the hope of finding some resolution of the question. The only lay testimony on the part of plaintiff was given by plaintiff himself and his wife, while defendant produced the testimony of Messrs. Hicks and Butler, who were present at the site of the accident and had first-hand knowledge of the incident.
Plaintiff's testimony in many instances is unconvincing and the testimony of his wife is of comparatively little value by reason of the fact that she appeared unable to remember a number of pertinent facts.
On cross-examination counsel for defendants brought out the fact that plaintiff, on three occasions between 1947 and October 4, 1951, the date of the accident for which he here seeks compensation, had been involved in employment accidents for which he had collected settlements in varying amounts from $500 to $1,100. In one of these accidents plaintiff alleged he had been struck by the branch of a falling tree, the facts involved apparently being very comparable, and indeed, almost identical, with those which are disclosed in this action.
In his opinion the trial judge particularly commented upon the good reputation of the witness Hicks and stated that he accepted the testimony of this witness as correctly detailing the happenings of the accident. We point out that the relation of the details connected with the accident by this witness was considerably at variance with the story related by plaintiff. And in this connection we further observe that the opinions of the medical witnesses who appeared in the case were influenced not only by the results of their examinations of plaintiff but by his recital of the history of the case. Some of the pertinent details of this history as given by plaintiff involved his assertion of unconsciousness, fainting spells and the spitting of blood, which details not only fail of support by the witnesses Hicks and Butler but were positively contradicted.
The testimony of the lay witnesses is of comparatively little assistance, for the question fundamentally requires a scientific determination and does not respond to lay opinions and conclusions. Plaintiff's disability is indisputable, but, even conceding the existence of many of the subjective symptoms from which he complains, we are unable to justify a conclusion that the disability is chargeable to the accidental traumatic injury rather than to the effects of the serious and disabling intestinal operation which was performed in February of 1952. With due respect to the medical witnesses who appeared in the instant case we cannot find they were qualified by experience to pronounce opinions which could be regarded as establishing the foundation for a definite conclusion with respect to the question of the existence, vel non, of traumatic or post-traumatic encephalopathy. Indeed, none of these gentlemen claimed to be experienced in this respect. It appears to us that the field of medical education, training and experience which embraces this particular disability comes within the peculiar province of neurology and neuro-surgery. It is indicated in brief of counsel that qualified practitioners in these spheres of medical practice were not available, a circumstance which is to be regretted.
Adverting to the opinion of the trial judge in support of the judgment rendered, we note his comments that plaintiff's condition is both physical and mental; was not wholly attributable to the accident, and the further expression that he did not believe the accident was nearly as serious as plaintiff contended. Referring to the testimony of plaintiff's expert witnesses the judge made the following observation:
"At least, according to the opinion of these three doctors, there is the possibility that plaintiff is suffering from said ailment as a result of the accident."
The court interpreted the law supporting his judgment in favor of plaintiff as being expressed in the opinion of Chief Justice Fournet in the case of Cockrell v. Penrod Drilling Co., 214 La. 951, 39 So.2d 429. We *693 are not in accord with the conclusion of the trial judge as to the effect of the holding in the cited case, since we do not believe that the points at issue are analogous to the case here under observation. We completely agree with the observation in the opinion of the cited case to the effect that every effort should be made to reconcile apparent contradictions in testimony. However, as we have previously observed, the medical testimony in the instant case is irreconcilable, and the lay testimony does not aid in an interpretation which would justify a definite conclusion.
Under the circumstances, and in view of the even balance as between the evidential support of the opposing contentions of plaintiff and defendants, we can only conclude that plaintiff failed to support his claim by the requisite preponderance of the evidence. The most that could be said in support of plaintiff's position is that he has succeeded in establishing a possibility of disability resulting from the accidental injury. The jurisprudence of every appellate tribunal of this state has incontrovertibly established the rule that the plaintiff in a compensation case, as in other cases, bears the burden of proof. He is required to establish his claims to a legal certainty by a reasonable preponderance of the evidence. Speculation, conjecture, mere possibility, and even unsupported probability, are not sufficient to support a judgment. These principles have been stated, restated, iterated, reiterated, emphasized and re-emphasized, in almost innumerable decisions among which we mention only a few of the latest citations: Taylor v. Mansfield Hardwood Lumber Co., La.App., 65 So. 2d 360; Knox v. Ethyl Corp., La.App., 53 So.2d 443; Williams v. Highway Ins. Underwriters, La.App., 51 So.2d 129; Hammett v. Cities Service Refining Corp., La. App., 50 So.2d 331; Dours v. Travelers Ins. Co., La.App., 48 So.2d 817; Nesom v. Caldwell & McCann, La.App., 48 So.2d 713; Price v. Blythe Bros., La.App., 46 So.2d 159; Palmer v. Penton Lumber Co., Inc., La.App., 44 So.2d 369; Franks v. Department of Highways, La.App., 43 So.2d 491; Cook v. M. J. Walsh Boiler Scaling Co. Inc., La.App., 40 So.2d 655; Pierce v. Delta Tank Mfg. Co., La.App., 39 So.2d 908; Lala v. American Sugar Refining Co., La. App., 38 So.2d 415; Pav v. Ethyl Corp., La. App., 37 So.2d 49; Johnson v. Brown Paper Mill Co., Inc., La.App., 35 So.2d 774; Yaw v. Mathieson Alkali Works, La.App., 26 So. 2d 718; White v. Delta Shipbuilding Co., Inc., La.App., 24 So.2d 497; Whitfield v. E. J. Dupont De Nemours & Co., Inc., La.App., 23 So.2d 376; Edwards v. Shreveport Creosoting Co., Inc., 207 La. 699, 21 So.2d 878; McCray v. Yarbrough, La.App., 20 So.2d 447; Brown v. R. P. Farnsworth & Co., La.App., 17 So.2d 48; Mitchell v. Littlejohn Transp. Co., Inc., La.App., 10 So.2d 651; Nickelberry v. Ritchie Grocer Co., 196 La. 1011, 200 So. 330; Scott v. Futrell, La. App., 197 So. 688; Horton v. Louisiana Veneer Co., La.App., 196 So. 363; Pelt v. Hillyer, Deutsch, Edwards, Inc., La.App., 190 So. 151; Agee v. Brown Paper Mill Co., Inc., La.App., 190 So. 148.
If this oft-enunciated principle has any meaning and any application, we are firmly convinced that it is appropriate to this case. Plaintiff has failed to justify his claims even by the measure of probabilities and as a result his contentions are dependent upon speculations and possibilities which are beyond and outside the realm of judicial pronouncements.
For the reasons assigned the judgment from which appealed is reversed and set aside and there is now judgment rejecting plaintiff's demands at his cost.