CHASEZ, Judge.
Plaintiff, John C. Gilmore, seeks maximum workmen’s compensation benefits from defendants, Brown and Root Company and its insurer, Highland Insurance Company, for permanent and total disability alleged to have been suffered by plaintiff as a result of an industrial accident while in Brown and Root’s employ.
Plaintiff appeals from a judgment dismissing his suit.
On November 28, 1960, plaintiff was injured when a grinding stone he was using broke apart and-part thereof struck plaintiff in the abdomen. Plaintiff testified he was knocked out and did not regain consciousness until he was in the hospital. A coworker, Arthur Clayton, testified plaintiff fell backwards, striking his back upon a small, step-like rise in the flooring. Plaintiff’s foreman, E. B. Rhodes, testified that he was not present when the stone disintegrated, but that shortly thereafter when he' arrived plaintiff was on his knees clutching his arm across his stomach and that Rhodes and others made him lie down until the ambulance came to take him to the hospital.
At the hospital plaintiff was treated by Dr. Marvin M. Ettinger, a surgeon, who testified he found the abdominal wound did not penetrate beyond the fatty tissue of the abdominal wall. Dr. Ettinger found no other injury. While plaintiff never complained of his back to Dr. Ettinger, he did on December S complain of “pain down his leg.” Dr. Ettinger examined plaintiff’s legs and found full range of motion. Dr. Ettinger did not attempt to determine the cause of the leg pain other than to determine it was not related to the industrial injury, since plaintiff had been sent to him as workmen’s compensation case for treatment of the industrial injury only. But because of the leg complaint Dr. Ettinger or one of his associates may have given plaintiff crutches to use. Dr. Ettinger also saw plaintiff on November 30 and December 8, 14, 19, and 22, by which time the abdominal wound was completely healed.
On December 22, Dr. Ettinger informed plaintiff that he could find no explanation for his pain in the legs, and discharged him as able to return to work.
Plaintiff did not then return to work and has not worked since that time.
Plaintiff’s medical expert, Dr. Byron Un-kauf, an orthopedic surgeon, first saw plaintiff February 26, 1962, or some IS months after the accident. By that time this suit had been filed, making no allegation of any' injury to plaintiff’s back. Exactly when plaintiff first began to complain of his back is not disclosed by the record. However, plaintiff, in giving his medical history to Dr. *838 Unkauf, told him that X-rays were taken at the time of the accident in a similar position to that used by Dr. Unkauf in X-raying plaintiff’s lower back; and plaintiff also informed Dr. Unkauf that he had been given crutches the following day. On the basis of that history, Dr. Unkauf concluded that the disabling back condition he presently finds was “conceivably” caused by the accident; the doctor expressed the opinion that something more than a mild lumbosac-ral strain had to have been involved to require the procedures recited by plaintiff. But the testimony of Dr. Ettinger shows that no X-rays were taken of plaintiff in connection with treatment of his injury, and the crutches were given him merely because of leg pain which the doctor could not relate to the injury. We note, in fairness to plaintiff, that he had some kidney ailment in August 1961, and that perhaps he was then X-rayed and merely confused that or a similar incident with Dr. Ettinger’s treatment.
Dr. Unkauf also testified that disc pain usually occurs at the time of the injury. We repeat again that plaintiff did not complain of back pain until long after his injury of November 28, 1960.
We conclude, as did the District Court, that Dr. Unkauf having been thus misinformed by plaintiff, his conclusion is based on incorrect factual premises and must therefore be disregarded; that is, we cannot even accept that “conceivably” the present back condition was caused by the injury. Whether plaintiff presently suffers from ruptured intervertebral discs, as a result of some later event or merely from degenerative changes, is immaterial in this claim for compensation for his injury of November 28, 1960.
Dr. Richard Levy, a neurosurgeon called by defendants, was not allowed by plaintiff to conduct a neurological examination, and was therefore unable to give evidence of whether plaintiff now has a disc condition or any other disability. Dr. Levy testified that when plaintiff saw the pin used for the sensory pin-prick tests he refused to go further with the examination, saying he wasn’t going to be stuck. Plaintiff had undergone pin-prick tests for Dr. Unkauf previously, but testified Dr. Levy’s pin was dirty and rusty. The District Judge, who heard and saw the witness, rejected this testimony of plaintiff as incredible
The District Judge appraised the situation accurately, in our opinion, when he reasoned :
“Without Dr. Unkauf’s testimony, plaintiff has not established either that he has a disk injury or its connection with the accident. Although Dr. Un-kauf testified that in his opinion plaintiff had two (2) lesions in his back which were disks, at the same time he referred to the recommended operation as “exploratory”. On causation, the doctor’s testimony is not positive. When asked if the accident could have caused plaintiff’s condition, the doctor’s reply was “conceivably so”. Dr. Un-kauf is an expert, but the opinions of expert witnesses are valueless if based upon facts which do not exist. Keener v. Fidelity & Casualty Co. [La.App.], 96 So.2d 509. (1957).
“Dr. Unkauf assumed a back injury at the time of the accident and related the crutches, given to plaintiff for a leg complaint, to such an injury. The assumption is incorrect. Further, Dr. Unkauf testified that a ruptured disk would cause immediate pain. Presumably, two such disks would cause more pain. Had plaintiff suffered the pain of a ruptured disk, it is inconceivable that he would have failed to report it to the doctors, failed to mention it in two statements to the insurance company adjuster, failed to mention it to his attorney when the suit was prepared almost one year after the accident, and failed to complain of it to anyone until he sought treatment for a medical condition (the kidney ailment referred to above) which would, of itself, cause *839 pain and was suspected by Dr. Unkauf on his first examination.”
The record as a whole, then fails to contain any evidence upon which it could be concluded that the accident of November 28, 1960, caused plaintiff any injury other than a minor abdominal wound, from which he recovered by December 22, 1960:
“ * * * The jurisprudence of every appellate tribunal of this state has incontrovertibly established the rule that the plaintiff in a compensation case, as in other cases, bears the burden of proof. He is required to establish his claims to a legal certainty by a reasonable preponderance of the evidence. Speculation, conjecture, mere possibility, and even unsupported probability, are not sufficient to support a judgment. * * * ” Roberts v. M. S. Carroll Co., 68 So.2d 689,693 (La.App.1953).
The judgment appealed from is, therefore, affirmed.
Affirmed.