SCHOTT, Judge,
with whom REDMANN, Judge, joins, dissenting.
The majority’s summary of the evidence of record must be supplemented for an appreciation of my opinion.
Included in the V.A. records, first produced at the trial after remand, are reports of *447 X-rays taken of plaintiff’s lumbar spine on March 2, 1964, and September 2, 1964, which are significant and will be later referred to in connection with the testimony of Dr. Vogel. They also contain a report of the treatment administered to plaintiff at the V.A. Hospital in July, 1968, when plaintiff was finally treated for his herniated disc. It should be emphasized here, as was mentioned in the previous opinion of this court, that it was not until after the workmen’s compensation case was tried (in May, 1967) that plaintiff’s herniated disc was definitely diagnosed and the surgery was performed on him by Dr. Vogel (in July, 1968). For this reason much of Dr. Vogel’s testimony is irrelevant to the issue of defendant’s malpractice since such evidence was obviously unavailable at the time the workmen’s compensation case was tried. Nevertheless, at least two points made by Dr. Vogel were pertinent and deserve mention here.
Dr. Vogel was asked to compare the two X-ray reports mentioned above which read as follows:
“3/2/64: MULTIPLE VIEWS OF THE LUMBOSACRAL SPINE REVEALS the vertebral bodies to be of normal height. No evidence of narrowing of the interver-tebral disc space is noted. Early hyper-trophic osteoarthritic changes are present, however, no evidence of spondy-lysis, spondylolisthesis or inflammatory or neoplastic disease is noted.”
“9/2/64: EXAMINATION OF THE LUMBOSACRAL SPINE REVEALS narrowing of the 3rd and 4th cervical interspaces with associated hypertrophic change. Findings are compatible with disc pathology at these levels. Failure of closure of the neural arch of SI is noted. Apophyseal, sacroiliac, and hip joints do not appear unusual. There is no evidence of fracture, spondylolisthesis, inflammatory, or neoplastic disease.
“CONCLUSION: Radiographic changes compatible with disc pathology at the level of the 3rd and 4th lumbar interspaces.”
The doctor testified that the X-ray report of March 2 was relatively normal, showing the degree of wear and tear in the back which would be expected from degenerative arthritis, whereas the second X-ray report did suggest an abnormal condition. He concluded that if there had been a traumatic incident between March and September “one could say that the disc incurred further damage at this time and now was exhibiting the narrowing [of the interverte-bral space] . . . ”
Dr. Vogel also testified that, based on the assumption that there was a traumatic incident in September of 1963, aggravated by a second incident in May of 1964, the necessity for the lumbar myelogram and laminec-tomy was the direct result of the initial injury.
At the trial of the workmen’s compensation case, a report by Dr. Gernon Brown, an orthopedist, March 19,1965, was introduced in evidence. He then reported that there was an impairment in the function of plaintiff’s back and expressed the opinion that the symptoms may be due to nerve root irritation, possibly from a herniated disc, and thought that plaintiff should undergo a myelogram at that time. At the trial of the malpractice case on remand, Dr. Brown was called as a witness for the first time. In his testimony he expanded considerably on what had been contained in the short letter report and quoted the following from his office record:
“Opinion: Examination of this patient reveals evidence of impairment in the function of the back.’ There is a decreased range of motion in the patient’s lumbar spine. In view of the patient’s complaints of numbness in both lower extremities together with the complaints of radiating pain on straight leg raising I believe his symptoms may be attributable to nerve root irritation.
“In my opinion, Mr. Lewis should undergo myelograph examination of his lumbar spine.”
Dr. Brown also expressed the opinion that as of March, 1965, plaintiff was disabled because of the impairment in the function of his back.
*448 In reasons for the judgment now on appeal, the trial court considered the evidence presented at the trial on remand as to why the Veterans Administration Hospital records were not introduced at the workmen’s compensation trial. Based on the earlier opinion of this court in this malpractice proceeding, it was already determined that defendant’s failure to produce those records constituted a breach of defendant’s professional responsibility, and perhaps further evidence as to why the records were not produced was irrelevant at the trial on remand. Nevertheless, the court considered defendant’s testimony that the reason why the records were not produced was because of plaintiff’s decision not to execute a form required by the V.A. in order for him to authorize the release of the records, and the trial court specifically resolved the conflict in the testimony between plaintiff and defendant on this point in favor of plaintiff. This was a credibility call by the trial court which should not be questioned by us on this appeal.
The trial court discussed the testimony of Dr. Hinson, the entry in the V.A. records of the orthopedic evaluation and an X-ray report of September 2. He also mentioned a report made by a Dr. Jarrell in the V.A. record in which it was noted that plaintiff had no muscle spasm and did not require hospitalization at that time. The trial court then concluded as follows:
“The court must consider the testimony of Dr. Hart/Hunt, the orthopedic surgeon to have greater weight than that of Doctor Hinson, who although a resident doctor at the Veterans Administration Hospital was by his own admission a specialist in internal medicine. It seems logical that Dr. Hinson did not seriously disagree with Dr. Hart/Hunt’s diagnosis as he refused admission eligibility to petitioner on the basis of Dr. Hart/Hunt’s findings (deposition page 5).
“Two other doctors made notes in the hospital records, Drs. Jarrell and Hendler. Dr. Jarrell states there was no muscle spasm and no need for hospitalization. Dr. Hendler concluded ‘ . changes compatible with disc pathology
“The court concludes that from all the facts under consideration petitioner has established at best a possibility of disability, which proof is insufficient for recovery. Roberts v. M. S. Carroll Co., Inc., et a1 [La.App.], 68 So.2d 689. The Veterans Administration Hospital records, and the deposition of Dr. Hinson by themselves do not convince the court that the burden of proof was carried by petitioner to establish that he suffered a herniated disc as a result of the May 29,1964 incident. Further, even coupling this evidence with the report of Dr. Brown as introduced in the workmens compensation suit the court cannot conclude that petitioner has carried the burden of proof sufficient to grant recovery for total and permanent disability.”
I believe the trial judge reached this erroneous conclusion because he took an incorrect approach to the problem which was before him after the case was remanded and, in part, because he failed to consider some of the evidence which was presented at the trial on remand.
As I appreciate plaintiff’s burden of proof, he undertook to establish that except for defendant’s breach of his responsibility in handling of his workmen’s compensation case it is more probable than not that he would have won that case. I do not believe that this is precisely the same burden that plaintiff had in the workmen’s compensation case because the inquiry was not simply whether plaintiff was injured on May 29, 1964, and whether that injury caused him to be disabled as of the time of the trial in May of 1967, but instead whether defendant failed in his duty toward plaintiff in the handling of the case and whether that failure more probably than not caused his workmen’s compensation case to be dismissed.
As was pointed out by this court in the opinion affirming the dismissal of the workmen’s compensation case, the critical issue in that case was whether plaintiff had an accident on his job on May 29, 1964, at all. *449 At that trial the testimony of the plaintiff’s wife, brother, and sister-in-law were not introduced nor were the V.A. records produced. I am convinced that had this evidence been presented at the compensation trial the court would have been convinced that the on-the-job accident did occur. Unfortunately, our task here is complicated by the fact that we held in our earlier opinion of this malpractice case that it was not negligence on defendant’s part which caused the failure of the production of the lay witnesses but rather was plaintiff’s fault, and we are bound by that conclusion. Thus, our inquiry is whether the trial judge hearing the workmen’s compensation case would have decided that plaintiff suffered an accident on the job on May 29,1964, had he reviewed the V.A. Hospital records in addition to the evidence that was then presented to him in 1967.
It is regrettable that the malpractice case was not tried before the same trial judge who heard the compensation case because he would surely be in the best position to decide whether he would have made a different decision had these records been available to him, but unfortunately, this is not the case and, like the trial judge in the malpractice case, we must now decide what that original trial judge would have decided with this additional evidence.
The trial judge in the instant case, in his reasons for judgment, did not address himself to that issue but after discussing the V.A. report decided the case against plaintiff on the basis that a disability was not established resulting from the May 29,1964, incident. From those reasons the trial judge seems to have concluded that the incident itself was established.
The V.A. Hospital record of May 29 standing alone does not contain a specific statement by plaintiff that he was injured on the job that day. It does nothing more than establish that he did seek medical attention on the night of the accident. But there is an entry in the V.A. records on the following morning to the effect that plaintiff did sustain an accident at work on the previous day and his pain increased that evening. I believe that had the trial judge hearing the workmen’s compensation case seen these records he would have decided that plaintiff proved the occurrence of the accident.
The next question is whether the trial judge hearing the workmen’s compensation case would have concluded that the plaintiff was disabled at the time of the trial as a result of that accident had defendant produced evidence which was available to him. The trial judge in the instant case decided this issue adversely to plaintiff, and on this point I disagree.
The above quotation from the trial court’s reasons for judgment contains errors of fact which led him to arrive at an erroneous conclusion on this issue. In the first place, he did not attach great weight to Dr. Hinson’s testimony observing that he was a specialist in internal medicine as opposed to Dr. Hart/Hunt, the orthopedist. The trial judge apparently reached the conclusion that while Dr. Hinson felt plaintiff was disabled on May 29 and 30, 1964, Dr. Hart/Hunt did not find this to be the case, and Dr. Hinson “refused admission eligibility to petitioner on the basis of Dr. Hart/Hunt’s findings . . . ” We do not derive from the testimony of Dr. Hin-son and the reports by him and Dr. Hart/Hunt any connotation that plaintiff was not hurt. As we said, Dr. Hart/Hunt specifically referred on May 30 to the fact that plaintiff had the last episode of hurting himself by twisting and lifting on the day before while at work and that this pain increased during the night before. He specifically diagnosed musculo-fascial strain. The record does not say why plaintiff was denied admission to the hospital but we surmise that Veterans Administration Hospital may have refused admission because this was considered to be an on-the-job accident for which he might not have been entitled to treatment at the V.A. Hospital.
The trial judge referred to other doctors who made notes in the hospital records, Drs. Jarrell and Hendler, and he quotes from Dr. Jarrell’s report that there was no muscle spasm and no need for hospitalization. This *450 note was made by Dr. Jarrell when plaintiff was examined at the Y.A. Hospital on March 2, 1964, almost three months before the accident. Thus, Dr. Jarrell’s findings had nothing to do with the question of whether plaintiff was disabled as a result of this accident except for the fact that his back was predisposed to the injury perhaps as a result of the earlier injury of September, 1963. Furthermore, the trial judge’s reference to Dr. Hendler has to do with the X-ray report of September 2,1964, which is quoted above in this opinion. Standing alone that report means little if anything, but by reference to the testimony of Dr. Vogel this X-ray report does corroborate that plaintiff’s accident of May 29, 1964, caused substantial changes between the third and fourth lumbar vertebrae.
The trial judge makes no reference to the testimony of Dr. Vogel and Dr. Brown taken at the trial on remand, which we believe forms the basis of another error in his findings.
As noted, Dr. Brown testified without equivocation that plaintiff as of March, 1965, should have been subjected to a mye-logram. Dr. Vogel testified that the changes in the X-ray photographs of March and September, 1964, suggested that a traumatic incident had occurred in the meantime. There is no explanation in this record from defendant as to why no further orthopedic examination was made of plaintiff from Dr. Brown’s examination in March, 1965, until the trial of the workmen’s compensation case in May of 1967. We also have at the trial of the malpractice case testimony from Dr. Vogel that plaintiff’s condition for which he was eventually operated on began in May, 1964, and we must conclude that if plaintiff had been subjected to competent orthopedic examination and/or myelographic examination between March, 1965, when he was seen by Dr. Brown, and the date of the trial in 1967, his disability would have been established to the satisfaction of the trial judge. We think further that armed with the reports from Dr. Brown and the X-ray reports from the Veterans Administration Hospital, defendant’s duty to plaintiff encompassed that of consulting further with medical experts who, in all probability, would have made the necessary tests on plaintiff and would have concluded as of May, 1967, plaintiff was disabled as a result of the accident of May, 1964.
This has been a difficult case to decide. We have been required to review not only the activities of an attorney in the handling of the contested workmen’s compensation trial along with the preparations incident thereto, but also the probable decision of the trial judge in the workmen’s compensation case in the light of additional evidence which may have been presented by the attorney. In his brief to this court, plaintiff concedes that the evidence is weak with regard to proof of disability, but I am persuaded by his argument that the proper steps were not taken in the approximately two years between the filing of the suit and the time of the workmen’s compensation trial for defendant to work up the evidence which he knew or should have known would ultimately be necessary if he were to adequately represent his client. The weakness of the evidence presented was the result of defendant’s failure and was not the fault of plaintiff who relied on the professional competence of defendant to handle the case properly.
I respectfully dissent.