This suit is to recover compensation at the rate of $20.00 per week for a period of *Page 663 
not exceeding 400 weeks, plus medical expenses not exceeding $500.00, on account of an injury received by the plaintiff on or about the 16th day of January, 1947, which injury is alleged to have caused bilateral herniae or both a left and a right inguinal hernia, causing total and permanent disability. Plaintiff alleges that he did not, at the time of the accident, realize the nature or consequence of his injury and continued in the employment of defendant until on or about January 26, 1947, when he was laid off in a general lay-off; that on the 30th of June, 1947, he was notified by his employer, defendant herein, to return to work and in order to resume his former duties he was required to submit himself to a pre-employment physical examination by Dr. James R. Godfrey, defendant's physician, which said examination disclosed that he had double herniae, or both a left and a right inguinal hernia. He alleges that from the time he was laid off until he was called back to duty, he was not employed and drew and accepted, for such period, weekly unemployment benefits without knowledge of his disability. The defense is that the plaintiff did not receive any accident in the scope and course of his employment resulting in or causing the bilateral herniae and the accompanying disability.
Thus, there was presented only one issue in the lower court and that was whether or not plaintiff sustained the herniae in the course and scope of his employment with the defendant company. The trial judge found that plaintiff had failed to prove with legal certainty that he sustained the herniae in the course and scope of his employment and dismissed his suit. Plaintiff has appealed.
Plaintiff testified that he started working for the defendant in the latter part of 1943 and worked until some part of 1945, when he was laid off as the result of a general lay-off. He was rehired in the latter part of 1945 and worked until the latter part of January, 1947, and was then released in a general lay-off. On or about January 16, 1947, he was screwing fittings in a pump with a 24-inch Stilson wrench. While pulling with his full strength on the wrench, the wrench slipped causing him to lose his balance and going over backwards for a distance of ten feet, hitting something on the floor and finally landing on his buttocks on a box. He wrenched or turned his left ankle. He experienced the "severest" pain in his left ankle. He states: "I hurt myself when I hit the box or whatever I hit, but I thought it was just a jar, and got sick at my stomach." He was sick about twenty minutes. His foreman told him to report to the first aid office. He reported to the first aid within twenty minutes after his fall. He told the nurse at the first aid station that he had fallen and had hurt his ankle and being sick at the stomach. He knew that he had a bruise in the lower part of his abdomen; it was a burning feeling but did not care to show it to the nurse, nor did he tell her about it. From then on he was put on light duty and was finally laid off in the general lay-off on January 26, 1947. He immediately applied for unemployment compensation and thereafter went to his home northeast of Denham Springs, where he started a garden. His work consisted of plowing and hoeing to a small extent. On or about June 30, 1947, in obedience to a notice to return to work, he visited Dr. Godfrey's office for a pre-employment examination, and then was shocked to know that he had bilateral herniae. According to his testimony, outside of pains from his ankle, which abated prior to his termination on January 26, 1947, he had had no pains or any indication whatever that he had or was developing a hernia.
Ivy Pearson, a fellow employee, testified that plaintiff was putting a piece of pipe in a pump with a wrench; the wrench slipped and plaintiff ran backward and sat down on a box about seven feet away. He spoke to plaintiff and plaintiff's only complaint was that he had hurt his ankle. Plaintiff did not complain of any pains in his stomach, did not mention or complain of any bruises in the lower region of his body, nor did he mention that he was nauseated, at the time of the accident nor while working from the time of the accident to his termination nor since.
Jim Henry Street, a fellow employee, testified that, during the lay-off period between January and June of 1947, he and the plaintiff would come to the union hall at Baton *Page 664 
Rouge three or four times a week seeking employment; that the plaintiff did not complain or indicate that he had pains in his stomach, nor did he say anything about being hurt in the lower regions of his stomach or being hurt thereabouts. He and Cain went together for the pre-employment examination and Cain was the first to be examined. On coming out of the doctor's office, Cain said "Boy, I am in terrible shape." Cain was white and said "I am ruptured on both sides." Cain did not know it until then. Cain, during the lay-off period, farmed about three acres.
Sam C. Chambers a first cousin of plaintiff, testified that during plaintiff's lay-off period he, plaintiff, continually complained of pain in his lower stomach and sides and that he had been sick practically all of the time. This is diametrically opposed to the testimony of Street and plaintiff. From the examination of this witness by the trial judge, it appears his testimony did not impress the trial judge.
Dr. Charles McVea, a medical expert called by plaintiff, testified that he examined plaintiff on August 19, 1947, and that he found that plaintiff had definite hernias on both sides. The doctor states that from his examination he could not tell anything about the age of the bilateral herniae. He did not find any tenderness or soreness of any particular moment on either side. He was then asked the following questions and answered as follows:
"Q. Ordinarily would a recently developed hernia give indications of tenderness? A. A very recently developed hernia might show some tenderness or soreness, probably would but notnecessarily so.
"Q. From a hypothetical standpoint would it have been possible for the plaintiff in this case to have sustained a hernia in January without having knowledge of it until subsequent examinations? A. Yes, Sir.
"Q. Would that necessarily have been accompanied by nausea or other indications? A. No, Sir."
On cross-examination, the doctor states that if the plaintiff had sustained a hernia at the time as a result of the fall and the hernia was the size that it was at the time of the examination, plaintiff would have some pain in his lower abdomen or at least some burning sensation in his lower abdomen in the region where the hernia occurred. He might or might not have nausea or vomited. The predominant usual indication of this type of hernia is a burning sensation in the region of the hernia. Plaintiff did not inform him when the hernia occurred. The doctor concluded by saying that he questioned plaintiff relative to the occurrence of the hernia and plaintiff hold him that he first knew that he had a hernia after his pre-employment examination on or about June 30, 1947.
George Mathew Ellis, Jr., plaintiff's foreman, a witness for the defendant, testified that plaintiff was tightening up a piece of pipe into a meter which was located in a vice. The wrench slipped and plaintiff' took several steps backwards and sat down on the concrete floor. He immediately went over to plaintiff and asked plaintiff if he was hurt. Plaintiff replied that he thought that he had sprained his ankle. He is emphatic that plaintiff's only complaint to him was that he had hurt his ankle; plaintiff did not complain of any nauseated feeling in his stomach; he did not complain of any burning sensation in his lower abdominal region He instructed plaintiff to go to the first aid station, and that plaintiff left, within five minutes from the time of his fall, the scene of the accident, and walked, unassisted, to the first aid station. After the accident and for the remainder of plaintiff's employment, he, plaintiff, made no complaint, other than his ankle, particularly he made no complaint whatever relative to his lower abdomen and stomach.
J.B. Best, defendant's superintendent and, a witness for defendant, testified that he had occasion to talk to plaintiff subsequent to the accident of January 16th, and that plaintiff made no complaint to him of any pain in his lower regions, meaning his stomach or abdomen, nor did he complain of any hernia which he may have sustained on the job. He stated that, as plaintiff previously testified, that he, plaintiff, was dismissed in the general lay-off about January 26, 1947, as a result of the reduction in the force.
Miss Gladys Felps, a registered nurse then in charge of the first aid station, now *Page 665 
in the employ of the Lady of the Lake Hospital, a witness for defendant, testified that on or about January 16, 1947, at about seven o'clock, P.M., plaintiff came to her first aid station, as he had done several times before, with the complaint that "My wrench slipped while I was working on a pump, screwing fittings in it. I fell backwards on the ground and sprained my ankle", it being her duty to reduce complaints to writing on her reports in complainant's own words, and which duty she performed. She also had been admonished or warned to be on the lookout for herniae, and she is emphatic that plaintiff made no other complaint to her on that evening and particularly that he did not complain to her of any injury or pain in his lower regions, meaning his stomach; that he did not tell her that he had been nauseated as a result of the fall; that he did not mention any bruise sustained in the lower regions, and in general, any other symptoms of hernia, otherwise she would have noted it on the card and would have given him a slip to see a doctor.
The defendant then called Dr. Arthur N. Houston, a general surgeon of the City of New Orleans, who examined plaintiff, and Dr. James Robert Godfrey, the surgeon who rejected plaintiff for re-employment in June, 1947.
Dr. Houston testified that plaintiff, at the time of his examination (which, we gather from his testimony, was on the day of trial, October 7, 1947) had bilateral inguinal herniae. He was of the opinion that the herniae were not caused by the accident of January 16, 1947, for the reason that the directional force, falling backward in a sitting position, would not cause the downward strain on the inguinal canal; he was of the opinion that directional force would have been toward his back. He was of the opinion that plowing in the field was of such a nature of strain as to cause an inguinal hernia. He states that the herniae are very early, and very small and he was of the opinion that they were of recent origin. However, on examination by the court, the doctor admitted that there was no definite way for a doctor to determine the age of a hernia. On cross-examination the doctor would not say if the herniae existed prior to or in January, 1947. He cannot state how progressive the herniae have been. He concludes his testimony by stating that had plaintiff sustained a traumatic hernia such as related in this case, that plaintiff would have had accompanying pain at the time of the trauma.
Dr. Godfrey testified that he found that plaintiff had small bilateral inguinal herniae; that plaintiff stated to him that he was unaware that he had any herniae and that he expressed surprise that he had the herniae. Plaintiff suspected nothing whatever was wrong with his inguinal regions; plaintiff did not inform him of any accident or receiving any pain in the lower regions or of any nausea or vomiting while on the job at defendant's plant. The doctor states, as his opinion, that if a man sustained a hernia from a single traumatic accident, or if a man was predisposed to hernia, plus a traumatic accident, which resulted in the final breaking of the tissues, that such an individual would experience soreness and pain would persist for several days, anywhere from a week or two weeks. On examination by the trial judge the doctor states that he can't tell if the herniae were old or not. He states that in the event that in the event that a man is predisposed to hernia and he undertakes plowing in the field and the usual normal occupation of a farmer, such activity could bring about the final break in the inguinal system.
Defendants then offered a series of complaints by plaintiff to defendant's first aid station during the period of his employment.
Under the testimony as detailed above, the lower court, in his reasons for judgment, states: "To say that these herniae were a result of the accident which he is alleged to have sustained in January, 1947, would be a guess of the rankest kind and one in which this court will not indulge. In compensation cases, as well as in other cases, the burden of proof is on the plaintiff to prove to a legal certainty the allegations of his petition. This he has failed to do, and for this reason I am of the opinion that this suit should be dismissed."
[1, 2] It is incumbent on the plaintiff to show a causal connection between the accident of January 16, 1947, and his *Page 666 
present condition. In other words, the burden of proof is on him to establish, with a reasonable certainty, that the accident caused the herniae with which he is now suffering. We have only his testimony that he was sick at the stomach and had a bruise on his lower regions immediately after the accident. In that, he is not borne out by any of his co-employees. He did not complain to anyone at the scene of the accident to have been hurt outside of his ankle. His foreman testified that plaintiff complained of nothing else but of his ankle. His co-employee, Pearson, testified to the same effect. During plaintiff's many visits to Baton Rouge with his co-employee, Street, plaintiff made no reference to having suffered any burning sensation of pain in his lower region either at the time of the accident or thereafter. Although plaintiff states that he told Miss Felps of being sick at the stomach, she emphatically denies that plaintiff made any complaint whatsoever save the complaint relative to his ankle. The preponderance of the medical testimony is to the effect that if the accident had caused these herniae plaintiff would have had a burning sensation in the lower region and that the pain and soreness would have persisted for a greater length of time than to walk from the scene of the accident to the first aid station and that plaintiff would have shown some sign of such pains, such as paleness of the face, and would have informed his foreman and the nurse. The series of complaints of plaintiff to the first aid office filed in evidence clearly shows that plaintiff was a chronic complainant and had he received any symptoms of hernia, he would have readily and willingly informed Miss Felps thereof.
It is true that we have held in some cases that a claim for compensation may be proved by the testimony of plaintiff alone, but in such cases the testimony was reasonable and consistent and was supported by the surrounding circumstances. In this case we do not find his testimony reasonable and consistent and is not supported by the circumstances detailed supra.
In this court, plaintiff strongly relies on the cases of Hill v. J. B. Beaird Corporation, 19 So.2d 295 and Dortch v. Louisiana Central Lumber Co., La. App., 30 So.2d 792. A careful reading of these cases clearly shows that the cases are inapposite to the case at bar.
Suffice it to say that we find no error committed by the trial judge, but to the contrary, we are in full accord with his conclusion therein.
For these reasons, the judgment appealed from is affirmed.
ELLIS, J., absent.