GLADNEY, Judge.
This is an action to recover workmen’s compensation, instituted by Sip Parish against his employer, the Arkansas-Louisiana Gas Company and its insurer, The Fidelity and Casualty Company of New York. From an adverse judgment plaintiff has appealed.
The only issue raised is with reference to the duration of plaintiff’s disability. No contention is made as to plaintiff’s employment or the occurrence of an accident on January 26, 1954, that caused disability entitling Parish to workmen’s compensation through August 27, 1954, which has been paid', but defendants insist that the disability continued no longer than August 27, 1954, at which time the employee was able to resume his normal work. Plaintiff takes the position that he was at the time of the institution of suit on November 6, 1954, and when this case was tried on February 24, 1955, still totally disabled and unable to work.
At the time of the accident plaintiff had been employed by the Arkansas-Louisiana *601 Gas Company as a common laborer for a period of nearly four years, was thirty-three years of age, had been married for seven years and was the father of five children. He is described as being strong and a healthy-appearing individual, somewhat obese.
On January 26, 1954, while engaged in some pipeline work Parish was walking down a muddy slope carrying a fifty foot tape when his foot slipped out from under ■him and he fell back and landed directly on his back. He testified he immediately had severe pain in his back and had to lie there for a few minutes before he could get up and when he did try to get up, he could not straighten. He was promptly taken to Dr. Tom Smith who treated him until May 13th, at which time at the request of Dr. Smith, he was referred to an orthopedist for further attention.
Thereafter plaintiff was examined and treated by Dr. Donald F. Overdyke, Jr., and his partner and associate, Dr. Ford J. Macpherson, both orthopedists. He was given other clinical and X-ray examinations also by Drs. S. W. Boyce, a general surgeon, and Gene D. Caldwell, an orthopedist. The testimony of these doctors is substantially in accord, with the exception of that given by Dr. Boyce. Dr. Boyce was of the opinion plaintiff was at the time of trial totally disabled, whereas the others testified that as of August 27, 1954, it was their opinion plaintiff had completely recovered and was able to resume his normal work. We should report that Dr. Tom Smith did not see Parish professionally after May 13th and did not testify concerning his condition as of August 27th or later.
When plaintiff was received by Dr. Smith on the date of injury, the doctor conducted thorough clinical and X-ray examinations, the X-ray examination disclosing no evidence of injury to the bony structure of the back. As a result of his physical findings Dr. Smith concluded the patient had sustained a sprain of the muscles and ligaments of the lower back, and prescribed the wearing of a sacroiliac belt, analgesics and aspirin and administered physiotherapy. Parish was observed professionally by Dr. Smith some eighteen to twenty times. After almost four months of attention Dr. Smith questioned the genuineness of the continued complaints of his patient and requested orthopedic consultation. He testified:
“Well, my opinion at that time was that I was beginning to doubt this man’s * * * all of his symptoms, and I asked for a consultation for orthopedic men to see if they could find any trouble with him. I had not seen fit to hospitalize him.”
Parish then reported to Dr. Don F. Over-dyke, Jr., and was on May 27, 1954, given a thorough clinical and X-ray examination, following which the doctor was of the opinion plaintiff could return to his employment within six to twelve weeks. He prescribed the application of a Williams’ brace and continued to treat plaintiff. In connection with the X-rays taken on that occasion Dr. Overdyke noted a marked narrowing of the fifth lumbar interspace with a bony bit of spur formation, and irregularity in the anterosuperior margin of the body of the fifth lumbar vertebra, and antero-inferior margin of the fourth lumbar vertebra. His diagnosis was that at the time of his injury, Parish had sustained a contusion of the lumbar spine and that this, superimposed on the narrow lumbo-sacral interspace, was enough to produce the complaints of pain and limitation of motion in a man of his size and weight.
While Dr. Overdyke was on a vacation from his office on July 12, 1954, Parish returned for further examination and was received by Dr. Ford J. Macpherson. Complete clinical and X-ray examinations were made during which Dr. Macpherson observed muscle spasm. Thereupon he advised a brief period of hospitalization with the application of traction and accordingly Parish was admitted to a hospital on July 27th, 1954, where he remained until August 3, 1954. After his release from the hospital, Parish was given complete examinations by Gene D. Caldwell *602 on August 23rd and again by Dr. Over-dyke on August 26th, and on the latter date by Dr. Macpherson. The occasion for Dr. Macpherson’s second examination was a request by Dr. Overdyke, who wanted an independent check of his findings.
Dr. S. W. Boyce first examined plaintiff on November 21, 1954, and later made an additional examination about one week preceding the trial of the case. The doctor did not relate in detail, as did the other medical witnesses, the fullness of his examination. We assume, nonetheless, that his clinical and X-ray examinations were complete. Dr. Boyce said that his X-ray films were entirely negative of bone pathology, but thought Parish had sustained either a sacroiliac strain or a ruptured disc. He inferred that if he had experienced a sacroiliac strain he should have had as of the time of trial a normal recovery therefi-om. Conceding a total absence of any objective symptoms of a ruptured disc, the doctor considered a disc injury likely because of the employee’s continued complaints of pain over such a long period of time, (approximately a year).
Counsel for appellant points to the X-ray films taken by Dr. Donald F. Over-dyke on May 27, 1954, and his reading of those as showing a narrowing of the fifth lumbar innerspace, etc., as consistent with the complaints of plaintiff. Subsequent observations and examinations by Drs. Overdyke and Macpherson completely refute the contention. All other X-ray findings, including those of Drs. Boyce and Smith, were negative as to any bone injury.
Without attempting to discuss in detail the various orthopedic tests administered by the three orthopedists who testified at length herein, the record indicates that plaintiff’s complaints were exaggerated and, voluntarily, he made unnatural responses to many of the tests applied during the several orthopedic examinations. The three orthopedists who made at least five complete examinations were unanimous in their decisions that as of August 27, 1954, plaintiff was able to return to and perform his customary work.
During the course of the trial the following colloquy took place between the trial judge and Dr. Macpherson:
“Q. Doctor, the Courts find themselves in even a more confusing position than the doctors in these cases in trying to decide them. Now, I understand that there are various tests that you can give in these back cases in order to tell objectively whether or not the person is, in your opinion, suffering pain. I think you mentioned muscle spasm; that’s one of them,, isn’t it? A. Yes, sir.
“Q. What are some of the others? A. Muscle spasm that does not shift on weight bearing and does not shift in an attempt to move the patient, which you would say would be absolute splinting, is a really rather reliable indication that the patient has pain in the area. In a low back complaint, with no other complaint, the presence or absence of this spasm is just about the only true indication you have. The complaint of pain to deep pressure over the area is pretty subjective. If the patient persists in pointing to one specific locality and never moves or varies from it or doesn’t try to dissimmate it too broadly, I think you have to put more credence on it, whereas, if you get the impression that this man is exaggerating and trying to say he hurts all over the area, certainly you begin to doubt the validity of his complaint, and other than those two impressions that you get as an examiner, it is practically impossible to say whether a human being’s back is hurting him. The fact that he will not let you move it certainly is not a decent indication, because voluntary resistance of motion is very easy to accomplish. Now, in the back injuries where the possibility of a disc protrusion or other nerve root involvements are suspected, there are other good objective signs, such as atrophy and reflex changes and sensory disturbances. Frequently the sensory disturbances become confusing because *603 the patient is confusing them intentionally, and that often allows us to further formulate an opinion whether this man is playing honestly with you or not. In this man’s particular case, he had no leg complaints and he had no leg signs to suspect that he had nerve root involvement. So that his complaint was that of persistent stiffness and inability to move the low back because of painful restriction, and when I first saw him on July the twelfth, the man impressed me that he was hurting.
“Q. And you .found some objective symtoms to support that? A. Yes, sir.
“Q. All right now, will you tell us what those were ? A. And it was primarily the fact that he had true muscle spasm in the low back.
“Q. Now, on August the twenty-sixth when you examined him, did you find any objective symptoms consistent with his complaint at. that time? A. No, sir, he had no muscle spasm at that time, yet he would not move his hack.
“Q. So, you found no objective symptoms at that time? A. No, sir.”
In his written reasons .for judgment, the learned trial judge noted that the issue involved a question as to the sufficiency of the evidence to support plaintiff’s claim and made the following pronouncement, which we adopt with full approval thereof:
“Therefore we have the testimony of three orthopedic specialists to the effect that this plaintiff is completely recovered from the injury complained of, and the conflicting testimony of one general practitioner who says that plaintiff has not recovered, so the only way we could decide this case in favor of the plaintiff would be to completely disregard the testimony of these orthopedic specialists.
“In the case of Davis v. Swift & Co. [La.App.], 68 So.2d 670 [673], our Court of Appeal, Second Circuit, said:
“ ‘It has been repeatedly held by this court that the plaintiff carries the burden of proof to establish his claim in a workmen’s compensation suit and that conjecture and probability may not serve as a basis of judgment in such a case. See: Cain v. Delta Tank Mfg. Co., Inc., La.App.1948, 34 So.2d 662; Gaspard v. Baker Tank Company, La.App.1950, 46 So.2d 627; Knox v. Ethyl Corp., La.App.1951, 53 So.2d 443; Hogan v. Stoval Drilling Co., Inc., La.App.1951, 55 So.2d 284; Rider v. R. P. Farnsworth Co., La.App.1952, 61 So.2d 204.’
“The same thing but in different language is set out in Roberts v. M. S. Carroll Co., Inc. [La.App.], 68 So.2d 689 [693], wherein the court said:
“ ‘ * * * The most that could be said in support of plaintiff’s position is that he has succeeded in establishing a possibility of disability resulting from the accidental injury. The jurisprudence of every appellate tribunal of this state has incontrovertibly established the rule that the plaintiff in a compensation case, as in other cases, hears the burden of proof. He is required to establish his claims to a legal certainty by a reasonable preponderance of the evidence. Speculation, conjecture, probability, are not sufficient to support a judgment. These principles have been stated, restated, iterated, reiterated, emphasized and re-emphasized, in almost innumerable decisions, among which we mention only a few of the latest citations: * * *.’
“Thereafter the court cited twenty-seven cases in support thereof.
“Should there be any necessity for additional authority, it may be found in the most recent case of Green v. [A. C.] Campbell Construction Co. [La.App.], 78 So.2d 54 [56], wherein the court said:
“■ ‘ * * * Plaintiff has not established his claim with that preponderance of evidence and 'to that degree of *604 legal certainty as required, by law. That plaintiff has the burden to so. establish and make certain his claims, even in workmen’s compensation cases, where he is given much liberality and the technical rules of evidence are not binding upon him, is firmly established in our jurisprudence. Davis v. Swift & Co., La.App., 68 So.2d 670; Roberts v. M. S. Carroll Co., Inc., La.App., 68 So.2d 689; Mouton v. Gulf States Utilities Co., La.App., 69 So.2d 147; Driggers v. Coal Operators Casualty Co., La.App., 73 So.2d 602. In these cases and in the authorities cited in each of them, as well as in many others, it was held insufficient for a claimant to make out a case that is merely probable but that such must be established by a reasonable preponderance of the evidence to a legal certainty. * * * ’
“In reaching our decision in this case we find the language used by Court of Appeal of Louisiana, Second Circuit, in Rider v. [R. P.] Farnsworth [Co., La.App.], 61 So.2d 204 [206], to be particularly helpful. In the cited case the court said:
“ ‘In deciding if plaintiff has met the requirements of establishing his case by a preponderance of the evidence, we should properly evaluate the expert testimony presented by both sides. Medicine is a scientific profession which readily lends itself to specialization, and for knowledge and treatment of certain disabilities we have learned it is best to consult a specialist whom we concede to have, by reason of training and experience, special knowledge and skill in his chosen field. Mr. Malone in his work on Louisiana Workmen’s Compensation Law, page 368, Section 286, said:
“ ‘ “The specialist and the physician with considerable experience may be preferred over the general practitioner or the newcomer.”'
“We have somewhat the same situation facing us in the present case that our .Court.of Appeal had before it in the rather recent • case of Walker v. Monroe [La.App.], 62 So.2d 676 [679], wherein the appellate court refused recovery for a compensation claimant when there was conflicting testimony of only one orthopedic specialist and one general practitioner. In denying recovery in the cited case the court said: .
“ ‘Similarly, it should be noted that the complaints of plaintiff fall within a particular field of medicine that belongs to the orthopedic specialist. Dr. Daniel M. Kingsley was the only orthopedist who testified as to the extent and nature of plaintiff’s disability. Ordinarily, his evidence relating to a disability of the back or knee must be given a higher evaluation than that of a general practitioner who examined claimant only on one occasion. See, Harmon v. McDaniel, La.App. 1949, 41 So.2d 249; Price v. T. L. James & Co., La.App.1951, 53 So.2d 182; Anders v. Employers Liability Assurance Corporation, Ltd., La.App. 1951, 50 So.2d 87.’
“In the present case we have not just one orthopedic specialist but three testifying to the extent and nature of plaintiff’s disability, against the testimony of one general practitioner who examined the plaintiff on only one occasion.”
The District Court held that the preponderance of the medical evidence established in favor of the defendants the ability of plaintiff to resume his normal occupation as of August 27, 1954. We have carefully examined all of the evidence adduced in this case, endeavoring to evaluate it in accordance with the standards employed in the judicial determination of workmen’s compensation cases, and it is our considered opinion that the judgment from which appealed is correct.
For the reasons hereinabove assigned, the judgment from which appealed is affirmed.