22 So.2d 467

**IENNUSA v. ROSATO et al.**

No. 37569.

April 30, 1945.

Lester Pailet and Elias Bowsky, both of New Orleans, for plaintiff and appellant.

Legier, McEnerny & Waguespack, of New Orleans, for defendants and appellees.

HAWTHORNE, Justice.

This suit was instituted by plaintiff, Leon Iennusa, against Charles V. Rosato et al., to have cancelled, annulled, and set aside an ex parte judgment rendered on July 22, 1940, in the proceeding entitled "Succession of Josephine Montalbano Salvaggio", which judgment recognized the defendants as heirs of the late Mrs. Salvaggio and sent them into possession of her estate, and to have recognized a verbal agreement of copartnership which plaintiff alleges existed between him and the deceased Mrs. Salvaggio, and, as such partner, to be recognized as entitled to an undivided one-half interest in certain real estate situated in the City of New Orleans, purchased in decedent's name, and as the owner of one-half of a certain bank account deposited in the name of the deceased; and in the alternative, in the

event the court should find that no partnership agreement had existed between said parties, to recover one-half of all the money saved by plaintiff and decedent as a result of their joint thrift, labor, and industry, namely, the sum of $10,276.13, which is one-half the purchase price of the real estate acquired in the name of the decedent and one-half of the balance of the bank account deposited in her name.

The record in this case discloses that the plaintiff came to this country from Italy in the year 1907, and that until 1914 he worked for a railroad company, with the exception of several months during which time he was employed as a dishwasher in a hotel. In 1914 he became acquainted with one Mrs. Josephine Montalbano Salvaggio, who was at that time running a small business at 828 Bienville Street in the City of New Orleans. Shortly thereafter, plaintiff and the said Mrs. Salvaggio began living together as husband and wife out of wedlock, and continued to live so until 1935. In that year plaintiff married Mrs. Margaret White, with whom he lived in another section of the city until her death in 1938. Plaintiff then returned to live with Mrs. Salvaggio and remained with her until her death in 1940.

Between the years 1914 and 1935, three pieces of real estate were purchased in the name of Mrs. Josephine Montalbano Salvaggio, as follows: 825 Bienville Street, for the sum of $3800; 831-833 Bienville Street, for the sum of $8500, and 829 Bienville Street, for the sum of $8000. During the time these parties were living together, a bank account was opened in the name of Mrs. Josephine Montalbano, and upon her death there remained in this account on deposit with the Whitney Central Trust & Savings Bank, City Bank Branch, the sum of $252.26.

At the time plaintiff and Mrs. Salvaggio began to live together, he was about 27 or 28 years old, and she was about 48. She was unable to read and write or to speak English fluently. Plaintiff assisted Mrs. Salvaggio in the various businesses by collecting the rents and writing receipts, making repairs or contracting therefor, dealing with salesmen, working in the grocery store, peddling ice, coal, and wood, operating a rooming house for transients, paying taxes and insurance with funds derived from the businesses, and generally working with her in the management and control of the businesses and of all the rental properties.

After the death of Mrs. Salvaggio in June, 1940, her heirs were recognized and sent into possession of her estate by an ex parte judgment dated July 22, 1940, and thereafter, on August 22, 1940, Iennusa filed this suit against the heirs who had been recognized as such in the above mentioned judgment.

To plaintiff's petition defendants appeared and filed an exception of no cause or right of action, which was overruled. They then filed an answer which was a general denial of the allegations of the petition. Before trial on the merits, defendants also filed various pleas of prescription, but the record does not show any ruling on these pleas.

The case was tried on its merits, and thereafter, on February 7, 1944, judgment was rendered in favor of defendants, rejecting plaintiff's demands and dismissing the suit at his costs. From this judgment plaintiff has appealed to this court.

To establish his claim against this succession, plaintiff relies largely on his own testimony. On direct examination he testified as follows with regard to his alleged verbal agreement with Mrs. Salvaggio:

"A.    *  *  *  I said I would like to buy the place and she [Mrs. Salvaggio] said she did not want to sell, but she would like to get somebody to work and I decided to work there.

"Q. What was the agreement? A. The agreement was, we were to work together, pay the bills and the rest we were to save it up to use when we really needed it. We did not make an agreement to divide the money, or do anything with it, but just let it stay together."

He contends that, during the time in which he was living with Mrs. Salvaggio, the verbal agreement was that they were to work together, and that everything which was made each was to share equally, or that he was to have a one-half interest therein, and that this is true with reference to the various pieces of real estate purchased in the decedent's name and also to all the money which was made and saved in the various businesses, and under this contention he claims an undivided one-half interest in the real estate as well as in the money remaining on deposit in the bank.

He alleges and testified that all of these agreements were oral, and relies almost entirely on his own testimony for proof of the same.

He further testified that in 1935, after he had lived with the deceased for a long period of time and after the three pieces of real estate had been acquired in her name, he went to see Mr. Legier, the attorney who handled Mrs. Salvaggio's affairs, who informed him at that time, in answer to a question, that he had no interest in the real estate previously acquired by Mrs. Salvaggio. And about the same time, according to his testimony, Mrs. Salvaggio refused to recognize that he had any interest in the property, refused to marry him, and refused to make a will in his favor. Shortly thereafter, he married another woman and for a period of two and one-half years lived in another section of the city with his wife until her death, and was employed by the Sewerage & Water Board during this period and for about two years thereafter.

If plaintiff actually thought that he had an interest in the property and was a copartner in the businesses, as contended by him, the fact appears very strange to us that he at this time in 1935, when he was informed that he had no such interest, did not assert his claim or make a legal attempt to have his interest in the businesses and the real estate recognized, but, on the contrary, married another woman and accepted employment with the Sewerage & Water Board.

Plaintiff admits that during his relations with the decedent he carried his own

individual bank accounts and in 1920 acquired real estate in his own name at 2000-2002 Palmyra Street in New Orleans for a consideration of $5025. He claims the entire ownership of this property, although he admits that, as part of the consideration therefor, he used funds made and earned in the businesses, which businesses he now contends were of a partnership nature. Plaintiff claims a one-half interest in all property acquired by Mrs. Salvaggio in her own name, yet in the same breath he denies that she acquired or had any interest whatsoever in the property bought in his name during their relationship.

Plaintiff does not allege, and nowhere in the record is there any testimony, that he ever advanced any capital or used any of his own funds, if he had any, in the various businesses or in the purchase of any of the property acquired in the name of the decedent, but, on the contrary, he admits that he used capital and funds from the businesses to pay part of the purchase price of the property acquired by him, as above set forth.

Plaintiff stated that, at the time he became associated with Mrs. Salvaggio, he had in his own right the sum of $4000 in cash, but the record does not disclose from what source or how he had acquired this sum, if he actually had the same. He testified that he arrived in this country in 1907, barely able to speak and write the English language, and that for the seven years following he worked for a railroad company, with the exception of a few months during which he was employed as a dishwasher at a hotel, but the record is barren of any evidence as to what his earnings were during that period or what amount, if any, he saved.

If plaintiff actually had this sum of money, he does not allege, and did not testify at any place in the record, that he ever used the same, or any part thereof, in the businesses or for the purchase price of any of the real estate acquired in the name of decedent, and in fact he did testify that he never contributed any capital whatsoever to the copartnership which he contends existed between him and the deceased.

Plaintiff's own testimony shows that in 1925 he testified, in a law suit brought against the deceased, that the property located at 829 Bienville Street, which was purchased in her name, "belonged to Josephine" (Mrs. Salvaggio). And in the case before us he claims that he had a one-half interest in the selfsame property. We are unable to say which statement of the plaintiff is correct—that is, the statement sworn to in court in 1925 or the testimony we find on the same matter in this record—, although he does state that he so testified in 1925 for the reason that suit could be brought only against her, as the property was in her name.

Defendants' exception of no cause or right of action is aimed at the fact that the alleged partnership was either a universal partnership or a particular partnership, and that, if it were a universal partnership, it could not be proved by parol evidence, and, if a particular partnership, then such partnership included among its

assets real estate, and, such being the case, this partnership could not be proved by parol evidence. They cite in support of this contention Articles 2830, 2832, 2834, 2835, and 2836 of the Revised Civil Code.

In so far as plaintiff prays for a recognition of his right to a share in the property of the deceased under the alleged partnership, this exception may be well founded. However, since the trial judge overruled the same and rendered judgment on the merits rejecting plaintiff's demands, and since we have concluded that his judgment on the merits was correct, it is not necessary to express our opinion on the exception.

At the beginning of the trial, before any testimony was taken, counsel for the defendants objected to any and all evidence on the grounds that the petition disclosed no right or cause of action, that the claim of plaintiff had prescribed, and that parol evidence was inadmissible to establish title in the plaintiff to real estate or to prove the existence of any partnership or that any debt existed in favor of plaintiff against the estate of the decedent. In addition thereto, defendants' counsel urged the provisions of Act No. 207 of 1906, as amended by Act No. 11 of 1926, with reference to the admissibility of parol evidence to prove any debt or liability on the part of the deceased where a suit is brought within the delay of 12 months after the death of the deceased, unless such evidence consists of testimony of at least one credible witness of good character besides the plaintiff. This objection was overruled, and the court ordered the testimony to be heard subject to the objection.

■ Plaintiff in this case, to establish the existence of the copartnership as well as the claims of his alternative demand, relies principally, if not almost entirely, on his own testimony, and it is a well established principle of law that the testimony of a plaintiff in his own favor to establish a large claim against a succession should be received with the greatest caution. It is in itself of the weakest character, and, unless strongly corroborated, cannot serve as a basis for a judgment of recovery. Cutler v. Succession of Collins, 37 La.Ann. 95; Succession of McBurney, 162 La. 758, 111 So. 86.

■ The district judge, after seeing and hearing the witnesses and observing the manner in which their testimony was given, was evidently of the opinion that plaintiff had failed to prove his case with legal certainty. We think this opinion is correct. A plaintiff must prove his claim by a fair preponderance of the evidence, and this the plaintiff here, in our opinion, has failed to do on either his main or his alternative demand.

For the above assigned reasons, the judgment of the lower court is affirmed and made the judgment of this court; plaintiff and appellant to pay all costs.

HIGGINS, J., takes no part.