SIMON, Justice.
 

 John Dennis- Johnson, a rice farmer engaged in the growing, harvesting, marketing and drying of rice, instituted this suit for damages in the sum of $8,894.42 against the Providence Equipment Company, a commercial partnership composed of Hugh L. Kennedy and Albert P. Surles, and its insurer, Hardware Mutual Casualty Company, alleging that on or about September 8, 1954 he entered into a verbal contract with the said defendant partnership whereby it agreed to assemble and erect eight 2,200 bushel Butler Bins and furnish and install ventilating and drying equipment therefor, and connect said ventilating and drying equipment by a system of ducts to each, all for the agreed price of $12,844.86. On September 10, 1954 defendant commenced the performance of the said contract and as each of the bins was completed, plaintiff stored therein his 1954 rice yield, Century Patna rice being stored in three of the bins and Blue Bonnet rice in the others.
 

 In August, 1955 plaintiff removed the rice stored in the eight bins and allegedly discovered for the first time that the rice contained in each of the eight storage bins was rotted, sprouted and stack burned in the area where the aeration duct system entered therein. The rotted rice was unmarketable and the stack burned rice was reduced in value.
 

 Plaintiff contended that said damages were in general the direct result of the
 
 *215
 
 negligent failure on the part of defendant to construct the said bins as watertight storage facilities in a workmanlike manner, or specifically that the defendant failed to properly insulate the area between the outer circumference of the small aeration ducts and the wall of the Butler Bin, thereby leaving an uninsulated area through which rain was blown by wind or rainwater seeped therethrough, causing water damage to the grain stored there in the bins during the period from October 3, 1954 to August 19, 1955.
 

 Plaintiff based the amount of damages claimed by him on the .difference between the quantity of rice originally stored in the bins, as mathematically ascertained by the use of an accepted U. S. formula, and the quantity of rice actually delivered to the U. S. Government in settlement of loans secured thereon. Rotted rice, which was unmarketable, had been discarded. The value of the said loss was calculated on a loan price obtained by plaintiff from the U. S. Government on the eight bins of rice. Although the stack burned rice was not completely damaged and discarded, its value was considerably reduced.
 

 The defendant admitted the commitments of the verbal contract but denied the allegations of having performed this obligation in an improper and negligent manner. Alternatively pleading contributory negligence, defendant averred that the damage allegedly incurred by plaintiff was the direct result of his gross carelessness and negligence in that he stored newly harvested rice in the storage bins before their completion and before the installation of the aeration system; in that he failed to use the forced air drying equipment according to recommendations, prematurely discontinuing its use; in that he failed to eradicate a known condition causing the rice to become stack burned; and generally in that he failed to store said rice in a proper and prudent manner.
 

 After hearing on the merits the trial judge rendered judgment in favor of plaintiff and against the defendants in the full sum of $5,828.90. Defendants appealed. ■Plaintiff has answered the appeal and prays that the judgment of the trial court be amended so as to increase the amount of the award to the sum originally prayed for and as amended.
 

 In his written reasons for judgment the trial judge concluded that the plaintiff fully proved his demand. We observe, however, that in reaching this conclusion we have not been afforded the benefit of his analysis of the facts in support thereof.
 

 The record contains ample evidence that plaintiff on emptying the bins in August, 1955 discovered damaged, rotted, sprouted and stack burned rice therein. However, the first and primary question to be determined by us is whether the rice damage was the result of alleged acts of negligence
 
 *217
 
 on the part of the defendants in its performance of its obligations imposed by the verbal contract.
 

 The storage bins, the inside aeration ducts, and the entrance ducts which tied on directly to the main outside aeration duct, were prefabricated by the Butler Manufacturing Company. The said outside ducts were fabricated by C. W. Hackworth, d/b/a the Lake Providence Tin Shop, and installed by him in accord with specifications issued by the Butler Manufacturing Company. The prefabricated bins were erected under the general supervision of H. F. Todd, defendant’s shop foreman. Claude Thomas, another employee of defendants, erected the eight bins and installed the aeration system. The construction of the bins consisted generally of fitting and bolting together prefabricated galvanized steel plates and parts in accord with the operating procedures manual furnished by the Butler Manufacturing Company.
 

 Plaintiff contends that the bins and aeration system were improperly and negligently erected in that the defendant or his employees altered the prefabricated duct entrance hole in each bin by the use of an electric torch, enlarging them as much as
 
 I1/2
 
 inches more than the diameter of the aeration pipe which was inserted through each, thereby leaving a space between the wall of the bin and the aeration pipe, which permitted moisture to enter with resultant damage to the rice stored therein. Plaintiff further contends that defendants failed to insulate or seal the duct entrance area in a prudent manner.
 

 H. F. Todd testified that he personally supervised the erection of these bins, and that during the course of this work they were erected without changes or alterations in their prefabrication. Apparently certain rubber fittings had not been delivered by the manufacturer, and he testified that these fittings had to be shipped to him before the bins could be assembled. We assume that the testimony is an attempt to show proper insulation.
 

 Claude Thomas, who actually erected the bins and installed the ventilating system, testified that the construction was performed in accordance with the specifications contained in the operation procedures manual issued by Butler Manufacturing Company; that neither he nor his helpers cut or altered the ventilating duct entrance holes;' that no welding or cutting was done to make any segment of the bins fit properly; that the prefabricated aeration system was delivered complete in all detail ready to be bolted down, which he and his helpers did. This witness who did the actual construction-of the bins testified positively that holes were neither cut nor enlarged by him or under his supervision.
 

 Clifford Wayne Hackworth, an experienced tinner, testified that he fabricated and installed the aeration ducts used in the aeration system in accordance with the
 
 *219
 
 Specifications contained in the operating procedures manual; that he did not do any torch work or enlarge any of the' holes in the tanks, nor does he have any knowledge of any other person doing so. He further testified that at the time of the installation of the aeration ducts fabricated by him the entrance collar and flange, which is a single unit of metal, was already installed in the entrance hole in each bin, and that he found these units to have been installed in accordance with the manual of specifications. In installing the aeration ducts Hackworth tied or connected the outside aeration duct pipe to the entrance collar hy soldering the two together and further waterproofing the connections by applying plastic cement. He personally made a final inspection of his completed work and found it to be in complete order for usage, and no complaints were thereafter made to him. Mr. Todd testified, however, that Hackworth projected the pipes inside or within the innerfacing of the circular entrance collar rather
 
 than
 
 placing
 
 them over
 
 and above its exterior facing, which was not in Todd’s opinion an altogether proper method of construction. Plaintiff hopefully relies on Todd’s said testimony as proof of the alleged improper installation of the aeration ducts with the resulting water damage to the stored rice. As we read the testimony of Mr. Todd and give a fair interpretation thereto we find that he did not intend any condemnation of the method employed by Hackworth, but rather an expression by him of a method he would have employed rather than that employed by Hackworth. We find nothing in Todd’s testimony that would indicate that the method used by Hackworth was in any way inefficient such as would be productive of the damage complained of. We find nothing in the record to dispute or contradict the testimony of Hackworth that in fabricating and installing the aeration ducts into the ventilating system he complied with all operating procedures prescribed in the manual furnished by the Butler Manufacturing Company.
 

 Ernest O. Beck, who was plaintiff’s employee in harvesting the 1954 crop, testified that he inspected the bins about two weeks before trial of this cause, or two years after the bins had been erected, and that from his observation the entrance duct had been cut with a blow torch though he had no knowledge of when this could have occurred. He further testified that he dug into or scraped off the sealing compound around the area where the aeration duct entered the bins and observed holes or open spaces between the entrance collar and vent of the bin. Conceding the correctness of his observation, we attach little merit thereto in view of the necessity of his having to dig into and scrape off the plastic cement or sealing substance which manifestly establishes evidence of waterproofing. Although he was employed by plaintiff in 1954,
 
 *221
 
 Beck did not examine any of this construction in 1954, or until two weeks before this trial. He had no knowledge whether the plastic cement or sealing substance was applied in 1954, 1955, or when it was applied.
 

 James Elmer Stampley testified that on the day before the trial he examined one of the bins and found that the stop panel inside the bin had been unbolted; that the sealing compound had been scraped off; and that, further, from his observation “the hole in the tank had been cut with a burning torch”. It is significant that he had not examined the bins at the time of their erection, this being his first and only inspection, and hence he was unable to testify as to when and by whom the holes had been cut, if at all, or the method employed in the installation of the aeration ducts. The testimony of this witness and of Mr. Beck is not impressive.
 

 We find it highly significant that the parties who actually participated in the assembling and erection of the prefabricated bins in 1954 testified that all parts, including the ventilating duct entrance hole in the bin proper, were delivered prefabricated by the manufacturer ready for fitting and erection without alteration, and were erected in accordance with the manual of procedures. On the other hand, we find no impressive evidence to show that these bins were erected contrary to proper and prescribed procedure.
 

 On the facts here presented we conclude that plaintiff has failed to prove that alleged negligent or faulty construction caused the interior of the storage bins to be subjected to rainwater resulting in the spoilage of rice stored therein. We concede that there exists ample proof of damaged rice but conclude that there is no proof in the record that the storage bins or aeration pipes were improperly fabricated or erected as to justify an award in damages.
 

 Though damaged rice was found in the immediate area of the entrance aeration ducts of the bins it does not follow that these aeration ducts were improperly constructed. To draw such an inference without proof of faulty construction of the aeration ducts would be just as unreasonable as to conclude that the damages complained of may have been caused by the averred storage of improperly dried rice or that the rice contained excessive moisture before being stored or that the plaintiff prematurely discontinued the use of the drying process, thus causing moisture to accumulate or that water particles could have been drawn into the bins by the force-air system causing damage in its immediate area.
 

 To draw inferences as to the proximate cause of damages such inferences must be reasonably drawn from and supported by the facts on which they purport to rest and may not be the result of mere surmise and conjecture. Pearson v. Louis
 
 *223
 
 iana & Arkansas Railway Company, 226 La. 834, 77 So.2d 411 and authorities cited therein.
 

 It is well settled in our jurisprudence that decisions cannot be based on mere assumption of facts. Bates v. Monzingo, 221 La. 479, 59 So.2d 693. It is equally well settled that one entitled to recovery must make and establish his claim to a legal certainty and by a fair preponderance of the evidence; to make it probable is not enough. Jackson & Anderson v. Beling, 22 La.Ann. 377; Dreher v. Guaranty Bond & Finance Co., 184 La. 197, 165 So. 711; and Iennusa v. Rosato, 207 La. 999, 22 So.2d 467.
 

 The rule is well stated in 38 Am.Jur., p. 1033, Section 334, as:
 

 “In accord with the rule governing proof of negligence generally, proximate cause need not be established by the testimony of eyewitnesses, nor by direct or positive evidence, but may be proved by circumstantial evidence; it may be determined from the circumstances of the case. It is not indispensable that the evidence showing the connection between the negligence and the injury should be exhibited by the acts or declarations of the injured party, as it may be shown by facts and circumstances entirely independent of anything that he said or did, as by the acts of the party charged witli negligence, if these acts were of such a nature as that but for them the injury would not have happened. In view of the fact that the burden of proof is on. the plaintiff, such circumstances must be ample and must appear from the evidence. Moreover, the evidence must not leave the causal connection a matter of conjecture; it must be something more than consistent with plaintiff’s theory as to how the accident occurred. Where the proof of causal connection is equally balanced, or the facts are as consistent with one theory as with another, plaintiff has not met the burden the law casts upon him.”
 

 After trial on the merits and prior to the rendition of judgment the defendants filed a plea of prescription of one year on the ground that it was conclusively established on the trial that plaintiff had knowledge that the rice stored in his bins was damaged on or about April 27, 1955, and that therefore this suit for damages which arises in ex delicto, having been filed on June 13, 1956, was filed too late, the same having prescribed by the prescription of one year. The trial judge correctly overruled this plea of prescription for, notwithstanding the alleged knowledge of damaged rice, an examination of the pleadings filed herein unequivocally shows that this action is predicated on a breach of the alleged verbal contract, the execution of which is admitted by the defendants. It is patent
 
 *225
 
 therefore that the pleadings and evidence clearly demonstrate that the cause of action herein asserted is one purely ex contractu and not one in tort and therefore subject to the prescriptive period of ten years. LSA-Civil Code Article 3544. It does not appear from the record that plaintiff waived any right to predicate this action on a breach of contract, nor does it appear that the defendants evidenced any disposition to force plaintiff to elect between an action in tort or one for breach of contract.
 

 In American Heating & Plumbing Co. v. West End Country Club, 171 La. 482, 131 So. 466, 469, this Court said:
 

 “The rule is well settled that a party to a contract may have a money demand against the other party to a contract and may sue either on the tort or upon the contract at his option or election. Liles v. Barnhart, 152 La. 419, 93 So. 490, and authorities there cited. The character of the action determines the prescription applicable thereto. If the action is purely one in tort, then it is prescribed by one year. If the action is predicated on a breach of the contract, then it is only prescribed by ten years.” Lafleur v. Brown, 223 La. 976, 67 So.2d 556; and also Illinois Central Railroad Co. v. New Orleans Terminal Co., 143 La. 467, 78 So. 738; and C. W. Greeson Co. v. Harnischfeger Corp., 219 La. 1006, 54 So.2d 528.
 

 It necessarily follows that since plaintiff seeks the recovery of damages for the breach of contract that the prescription of one year is inapplicable.
 

 For the reasons assigned the judgment of the trial court is reversed, annulled and set aside and plaintiff’s suit is dismissed at his cost.