LOTTINGER, Judge.
This is an action in tort arising out of an automobile accident which occurred on August 7, 1962, on Plank Road near the intersection of Mohican Street in the Parish of East Baton Rouge, Louisiana. The plaintiff, Mrs. Beatrice M. Martin, was a passenger in an automobile driven by Robert G. McDowell, Jr., when the McDowell automobile was struck from the rear by an automobile owned by Alvin B. Marson, Sr. and being operated by Alvin B. Marson, Jr., who at the time of the accident was an un-emancipated, unmarried minor residing with his father, but who, at the time of the filing of the instant suit had attained his majority.
The facts surrounding the accident are not in dispute, and it appears from the record that while the McDowell automobile was stopped in a line of traffic waiting for a signal light to change, it was struck from the rear by the Marson automobile. Mrs. Martin was thrown forward and against the dashboard. After the accident had been investigated by the police, Mr. McDowell, a co-worker of Mrs. Martin’s at the Louisiana Department of Highways, took Mrs. Martin to her home in Baton Rouge. The accident occurred on a Tuesday and Mrs. Martin went to work the day following the accident, and as a matter of *770 fact, missed no work whatsoever as a result of the injuries sustained by her in the accident. Mrs. Martin testified that on Wednesday, the day following the accident, she felt nervous, and that the upper part of her body was somewhat stiff. On Friday afternoon following the accident, Mrs. Martin called Dr. Rieger in Baton Rouge and made an appointment to see him on the following Monday. On the Saturday following the accident, Mrs. Martin went to Louisiana State University to take a Civil Service examination, and while there started hemorrhaging and having pains. She left the examination about 3 :00 in the afternoon and called her husband, who came to the University, picked her up, and took her home. She got into bed at home and remained there over the balance of the weekend. She attempted to call the doctor but was unable to get in touch with him. Mrs. Martin went to work as usual on Monday morning and kept her appointment with Dr. Rieger on Monday afternoon after work. She was treated by Dr. Rieger for a relatively short period of time and was thereafter discharged.
On July 24, 1963, Mrs. Martin and her husband, Byron F. Martin, Jr. filed the instant suit, naming as defendants Alvin B. Marson, Sr., Alvin B. Marson, Jr., and Westchester Fire Insurance Company, the liability insurer of the Marson vehicle. In the petition, Mrs. Martin set out the time, place, date and facts surrounding the collision, alleged specific acts of negligence on the part of Alvin B. Marson, Jr. and alleged that in being thrown forward against the dashboard of the automobile she had injured the muscles, tendons, nerves, fibers, and soft tissues of her back, which caused sharp pain upon bending or moving and exercising her back. She further alleged that on the date of the accident, she had been pregnant for a period of two and one-half months, and that as a result of the accident, she began bleeding profusely four days after the accident, and that she subsequently aborted or miscarried between the date of the accident, August 7, and August 27. She prayed for damages by reason of the mental shock, suffering and disappointment occasioned by this miscarriage. Mr. Martin likewise prayed for damages by reason of the mental shock, suffering and disappointment suffered by him at the loss of his child, as well as praying for reimbursement of the medical expenses for the treatment of his wife as a result of the miscarriage.
The defendants filed an answer admitting the occurrence of the accident and generally denying the allegations of negligence contained in plaintiffs’ petition.
After a trial on the merits, the Trial Judge, with written reasons, granted judgment in favor of Mrs. Martin and against the defendants in the sum of $500.00, and rejecting the claim of Mr. Martin. In his written reasons for judgment, the Trial Judge found that Mrs. Martin had suffered “a very mild whiplash injury”. The $500.00 award was made by the Trial Judge to compensate Mrs. Martin for the injuries suffered by her other than the alleged miscarriage. With reference to Mrs. Martin’s claim relative to the miscarriage, the Trial Judge said:
“There is simply not enough positive testimony in the record to support plaintiffs’ claim for damages for a miscarriage suffered by Mrs. Martin as a result of this collision, there are too many uncertainties and improbabilties to support a judgment for damages as a result of a miscarriage brought on by trauma. * * * ”
The Trial Judge found that the visits to the doctor’s office and the medicine purchased by Mr. Martin for his wife were for treatment of hemorrhaging and alleged miscarriage, and that those items in no way related to the neck or back injury suffered by Mrs. Martin.
It is from this judgment that Mrs. Martin devolutively appealed to this Court.
While counsel for appellants set out no specific assignments of error, we believe that his brief clearly indicates that he be- *771 Heves the Trial Judge to have been in error in his finding that there was not enough positive testimony in the record to support plaintiffs’ claim for damages for a miscarriage and that there were too many uncertainties and improbabilities to support a judgment for damages as a result of the miscarriage brought on by trauma.
The accident occurred, as aforesaid, on August 7, 1962, a Tuesday. On Friday, August 10, Mrs. Martin called Dr. Rieger’s office and made an appointment for the following Monday afternoon. On Saturday August 11, Mrs. Martin testified that while she was taking a Civil Service Examination at the University, she suddenly began hemorrhaging and went home, and that she remained in bed the rest of the day on Saturday the 11th, and on Sunday the 12th. On Monday, August 13, Mrs. Martin went to work as usual, and on her way home that afternoon stopped at Dr. Rieger’s office to keep the appointment that she had made the previous Friday.
Dr. Frank Rieger, who treated Mrs. Martin in connection with the accident and the alleged miscarriage, testified that he first saw Mrs. Martin on August 13, 1962 and that at this time she gave a chief complaint of bleeding and stated to him that she thought that she was approximately two months pregnant, having missed two menstrual periods, and that she had been bleeding for several days. The doctor, after the examination, entered in his notes, “possible pregnancy, two months duration” and he testified that he prescribed some medication for a threatened abortion and for cramping, and stated that his initial impression at the time was that she was in early pregnancy and was threatening or attempting to miscarry. Dr Rieger next saw Mrs. Martin on August 16, at which time he found some evidence of infection and started Mrs. Martin on antibiotics and penicillin. Because of the possibility of a pregnancy, he ordered a pregnancy test which was made on August 25, 1962. The report on the test was made on August 27, 1962 and was shown to be negative, which indicates, as we appreciate the doctor’s testimony, that either the patient is not pregnant or that if the patient was pregnant, the fetus has ceased to live. After having received the report of the pregnancy test, Dr. Rieger began treating Mrs. Martin in such a manner so as to clear up the bleeding which she had been experiencing.
When questioned about the initial physical examination which he made of Mrs. Martin on August 13, Dr. Rieger testified as follows:
“According to her history of having missed the periods and because of the fact that I felt that the uterus was enlarged and she was bleeding, I had to assume that she was pregnant at the time. Of course, I had no way of actually proving it, but I treated her on that basis. I wouldn’t have given her pregesterone if I hadn’t thought she was pregnant.”
Dr. Rieger testified that the last time which he saw Mrs. Martin in connection with her alleged miscarriage was on December 14, 1962, at which time he testified that she was doing quite well. He said that she still complained of her back on occasions and her neck, but felt like those injuries were definitely clearing and going away and that he did not go into any additional exhaustive therapy of any kind in regard to those injuries. He testified that at his initial examination based on subjective complaints made by Mrs. Martin, he was of the opinion that she had suffered a whiplash injury to the back and neck at the time of the accident.
Under cross-examination Dr. Rieger testified that Mrs. Martin had told him, as she had testified previously at the trial, that she had had several miscarriages, most of which were traumatic in origin. When questioned by counsel for defendants relative to his use of the words “possible pregnancy” the doctor replied:
“Well, its just — there is just no way to be real definite about it. My sincere *772 impression was that she was about two months pregnant, but — and we treated her on the basis of a threatened abortion. I have it documented that I gave her progesterone which I certainly wouldn’t have given if I hadn’t suspected the pregnancy. But I just have no way of knowing. * * * ”
Dr. Rieger was asked what meaning he attached to the word “possible” and replied:
“By the word ‘possible’ I mean that this was the — out of a differential diagnosis this was the best choice of what the diagnosis was. But when you can’t prove it, you can’t say positive. In other words this is only my impression, now if we could have gotten five doctors to examine her and each one of them say ‘well, we think she is pregnant’ then maybe we could say this was a positive pregnancy. But I have no means of— it’s only my impression, and I couldn’t give myself credit for being that positive because I really didn’t know. But I would assume that it was a real good possibility and that’s why I put ‘possible’ knowing that nothing in medicine is conclusive and it’s a question of opinion, so it was my opinion at this time that she was two months pregnant.”
Counsel for defendants propounded the following statement to Dr. Rieger:
“As a general rule the vast majority of medical opinion considers a causal relationship of trauma to an abortion untenable if there has been interval of more than seven days between injury and the abortion.”
When asked if he agreed with that statement, Dr. Rieger said that he did, basically.
Dr. Rieger testified that Mrs. Martin never did exhibit any real positive or prominent objective findings with reference to the whiplash neck or back injury, and that his findings were mostly on the basis of history and subjective complaints. He further stated that Mrs. Martin did not demonstrate any loss of function in the neck or back, and that while he had not made any exhaustive effort to make a diagnosis along those lines, she certainly did not exhibit any obvious deformity or loss of motion that might be seen objectively.
Our review of the entirety of Dr. Rieger’s testimony leads us to the conclusion that the net effect thereof indicates that in the doctor’s opinion he believed that Mrs. Martin was possibly pregnant at the time that he first saw her on August 13. In accordance with that possibility he treated her in such a manner so as to prevent a miscarriage which he thought might be threatened, and continued to treat her with that objective in mind until August 27, 1962 at which time he received the report of the pregnancy test which was negative. This test indicated that Mrs. Martin had either not been pregnant, or that if she had been, she had already miscarried. Thereafter, Dr. Rieger’s treatment was directed toward stopping the bleeding which had been occurring. His statements in connection with her pregnancy were all qualified by the words “possible” and, on occasion, “probable”. On one occasion, the doctor went into some detail as to why he could not be certain and absolute as to Mrs. Martin’s pregnancy at the time.
The following testimony was elicited from Dr. Rieger toward the end of the trial:
“Q. Doctor, is it possible for emotional upset, psychological upset to cause a miscarriage or abortion ?
A. I am sure it’s possible. I don’t know how you would really prove it, but I think there are many many causes of abortion and it’s a highly variable thing. Even your statement that you read in relationship to trauma is awfully difficult to really pin down. I don’t think anyone really fully understands the hormonal mechanism that sets this particular physical thing into being, and I think cer *773 tainly emotions have a lot to do with it. And I don’t think you can really put them all together. It’s something that happens, and unfortunately you can’t develop a pattern that is accurate enough to really specifically say, because just the very case that you would say, ‘well, this couldn’t he’ is the one that will fool you. And the very nature of the thing makes it very, very difficult to pin down accurate diagnoses and accurate statistics as to what the causes are. But there are many, many causes.”
Thus we see that Dr. Rieger not only was unable to testify that Mrs. Martin was positively pregnant at the time of the accident, hut he likewise at no time testified that the accident caused the miscarriage.
The case of Litton v. Parker, La.App., 106 So.2d 776, speaks generally of the burden faced by plaintiff in a Civil case, and says:
“The jurisprudence is well settled that one entitled to a recovery must make and establish his claim to a legal certainty and by a fair preponderance of the evidence. Even to make it probable is not sufficient. Johnson v. Kennedy, 235 La. 212, 103 So.2d 93; Iennusa v. Rosato, 207 La. 999, 22 So.2d 467; Dreher v. Guaranty Bond & Finance Co., 184 La. 197, 165 So. 711; Jackson & Anderson v. Beling, 22 La.Ann. 377. Neither may decisions be predicated on more assumptions of facts. Johnson v. Kennedy, supra; Bates v. Monzingo, 221 La. 479, 59 So.2d 693.
The Second Circuit Court of Appeal, in the case of Wilson v. Standard Accident Insurance Company, La.App., 92 So.2d 781, stated:
“The burden of proof is upon plaintiff, and, as has been declared in a long line of decisions, it is not sufficient for a plaintiff to make out a case that is merely probable but the requirement is that he must establish his case by a preponderance of evidence with legal certainty. Spears v. Brown Paper Mill Co. Inc., La.App., 9 So.2d 332; Powell v. American Employers Ins. Co., La.App., 14 So.2d 333; White v. Delta Shipbuilding Co., Inc., La.App., 24 So.2d 490; Pierce v. Delta Tank Mfg. Co., La.App., 39 So.2d 908; Franks v. Department of Highways for Louisiana, La.App., 43 So.2d 491; Driggers v. Coal Operators Casualty Co., La.App., 73 So.2d 602; Higgs v. Monroe, La.App., 77 So.2d 555.
There is, therefore, an incontrovertible rule well established in the jurisprudence of this State that the plaintiff in an action in tort, as in other cases, bears the burden of proof; he is required to establish his claims to a legal certainty by a reasonable preponderance of the evidence. Mere possibilities and even unsupported probabilities are insufficient to support a judgment. Roberts v. M. S. Carroll Co., Inc., La.App., 68 So.2d 689.”
In the light of this jurisprudence, which we believe to be sound, we do not believe that Mrs. Martin has established by a preponderance of evidence with legal certainty the fact that she was pregnant at the time of the accident nor do we believe that she has established a causal relationship between the automobile accident and any possible miscarriage which she might have suffered.
We therefore believe the judgment of the Trial Court to be correct, and that judgment will therefore be affirmed at appellants’ cost.
Judgment affirmed.