475 So.2d 384 (1985)
Eddie L. ARD and Maxine Ard
v.
SAMEDAN OIL CORPORATION and Seiscom Delta United Corp. (formerly called United Geophysical Corporation).
No. 84 CA 0634.
Court of Appeal of Louisiana, First Circuit.
June 25, 1985.
Rehearing Denied September 11, 1985.
Writ Granted November 22, 1985.
*385 Paul Due, Baton Rouge, for plaintiffs.
William E. Scott, Baton Rouge, for defendants.
Before WATKINS, CRAIN and ALFORD, JJ.
WATKINS, Judge.
This is an action brought by plaintiffs-appellees, Eddie L. Ard and Maxine Ard, to recover for damages allegedly done to their property, by the trespassing of a seismographic crew of defendant-appellant, Seiscom-Delta United Corporation. The trial court awarded plaintiffs, Eddie L. Ard $17,500 and Maxine Ard $12,500 in general damages, holding Samedan Oil Corporation (Samedan) and Seiscom-Delta United Corporation (Delta) (then entitled United Geophysical Corporation) liable in solido. We reverse as to Samedan. We reduce the award as to Delta and, as amended by the reduction, affirm the judgment of the trial court.
Testimony reveals that on May 3, 1981, Eddie L. Ard traveled the 6 miles from his residence to his 64.5 acre farm. When he arrived he noticed the chain cut on the entrance gate. Upon further investigation, Ard discovered Delta's seismic crew removing water with a hose from his stock pond and drilling test holes with a large vehicle mounted auger. Ard approached the crew members who stated they understood that permission had been received; Ard informed them to the contrary and asked them to leave, which they did. Shortly following the incident, some of plaintiff's cattle were discovered on the property of the adjacent neighbor, Sam George. Subsequently, George and other neighbors would periodically call the Ards and complain about the Ards' loose cattle which were trampling shrubbery, gardens, and lawns. In response, Mr. Ard, who, because of open heart surgery 9 months prior, was physically limited to daily visits to the front gate, at which time he would call in any nearby cattle. Ard also inspected the fence line as far as he could drive along it. No holes were discovered at this time. The cattle continued to wander on to Georges' property. A few weeks later, the Georges' grandson, Charles Johnson, investigated and discovered on his grandparents' property blue and white flagging, three recently drilled holes, and large vehicular tracks which crossed the Ard fence line. Johnson also found that the Ard's fence had been rolled over and knocked down and the property contained similar flagging and holes. Johnson informed the Ards of the damage. Mr. Ard and his two foster sons went and fixed the fence, which was knocked down in four different sections, in widths of 15 to 40 feet, with poles and barbed wire supplied by Ard. Two weeks after the repairs all the cattle were recovered and the complaints from the neighbors ceased.
Subsequently plaintiffs filed suit for damages for invasion of privacy, inconvenience, mental anguish and property damages. The trial court found for plaintiffs in the amounts stated above. Defendants have brought this suspensive appeal before this court requesting reversal of the judgment against Samedan and reduction of the award levied against Delta.
Plaintiffs alleged in their petition that the damages were done at the insistence of mineral lessee, Samedan, and/or by its agent and representative, Delta. The law of this state requires, in a civil proceeding, that one who asserts a fact must prove his case by a preponderance of the evidence. Preponderance of the evidence means evidence of great weight or evidence which is more convincing than that offered in opposition to it. Iennusa v. Rosato, 207 La. 999, 22 So.2d 467 (1945); Coltharp v. Hearin Tank Lines, Inc., 239 La. 445, 118 So.2d 881 (1960); Landry v. Madere, 396 So.2d 383 (La.App. 1st Cir. 1981), writ denied, 399 So.2d 611 (La.1981). The record reveals that plaintiffs offered no evidence or testimony to support their allegation of Samedan's involvement. Not *386 once during the trial was Samedan mentioned. We therefore must reverse the judgment as to Samedan.
Plaintiffs' allegation of the actual trespass and destruction of fence by the Delta crew is for the most part undisputed. The remaining issue before us involves the adequacy of the general damage award. Defendants contend the award is excessive.
We have recognized the right of one wronged by trespass to recover damages for mental anguish, humiliation and embarrassment. Loeblich v. Garnier, 113 So.2d 95 (La.App. 1st Cir.1959); Beasley v. Mouton, 408 So.2d 446 (La.App. 1st Cir. 1981). With regard to the amount of damages to be assessed against a trespasser, both for the invasion of the plaintiffs' property rights and the resulting mental anguish, humiliation and embarrassment, the trial court is afforded much discretion. Boswell v. Roy O. Martin Lumber Co., 363 So.2d 506 (La.1978); Beasley, supra. "The appellate review of awards for general damages is limited to determining whether the trial court abused its great discretion." Boswell, supra, at p. 507 (citing Revon v. American Guarantee & Liability Ins. Co., 296 So.2d 257 (La.1974)).
The trial court awarded a total $30,000 to the plaintiffs in general damages. Of that sum the court awarded $250.00 in property damages for the twelve (12) new fence posts, 250 feet of barbed wire and the labor of 3 men for 1 working day that was required to repair plaintiffs' fence. We are in agreement with that part of the award. The primary objective of this damage award is to restore the injured party in as near a fashion as possible to the state he was in at the time immediately preceding injury. Farr v. Johnson, 308 So.2d 884 (La.App. 2d Cir.1975), writ refused, 310 So.2d 854 (La.1975), writ refused, 315 So.2d 143 (1975).
The record indicates that the Ards were indeed humiliated and embarrassed by the escaped herd of cattle which wandered through the rolled over fence and onto the neighbors' property. The Ards also did suffer slightly more than "normal worry and inconvenience"[1] as they anguished over their wandering herd and complaining neighbors. However, while we sympathize with these elderly plaintiffs, we find that the trial court abused its great discretion in awarding $17,500 to Mr. Ard and $12,500 to Mrs. Ard in general damages.
The record does not support a finding of $30,000 in total damages. There was no testimony that Mr. and Mrs. Ard were threatened by any neighbors other than a complaint by phone, nor did any neighbor suffer damages greater than manure in their garden. Although the Ards' concern about the cattle wandering on to the highway was legitimate, Mr. Ard did very little to rectify the situation. In fact not one animal was permanently lost, stolen, or injured. Further, there was no medical evidence or testimony to support the trial judge finding that Mr. Ard's physical condition worsened or his recovery from heart surgery was delayed by the whole incident. Thus we reverse the trial court and limit recovery to $5,250 to the plaintiffs, $2,500 in general damages to each plaintiff and $250 in property damage.
The judgment of the trial court is amended to $5,250 reducing the sum awarded to Mr. Ard to $2,500 in general damages, to Mrs. Ard $2,500 in general damages. The award of $250 to plaintiffs for property damage is affirmed. The judgment of the trial court as to Samedan Oil Corporation is reversed. As thus amended, the judgment of the trial court is affirmed. All costs shall be paid by defendant.
AMENDED AND AFFIRMED.
NOTES
[1] "In order to recover for mental anguish, it must be proven that plaintiffs suffered more than minimal worry and inconvenience over the consequences of the damage." Meyers v. Basso, 381 So.2d 843, 845 (La.App. 1st Cir.1980), writ refused, 384 So.2d 794 (La.1980).