483 So.2d 925 (1986)
Eddie L. ARD and Maxine Ard
v.
SAMEDAN OIL CORPORATION, et al.
No. 85-C-1931.
Supreme Court of Louisiana.
February 24, 1986.
*926 Paul Dué, Walter Landry Smith, Due, Dodson, deGravelles, Robinson & Caskey, Baton Rouge, for plaintiffs-applicants.
William E. Scott, Watson, Blanche, Wilson & Posner, Baton Rouge, for defendants-respondents.
MARCUS, Justice.
Eddie L. Ard and his wife, Maxine Ard, instituted this action against Samedan Oil Corporation (Samedan), a mineral lessee of plaintiffs, and Seiscom Delta United Corporation (Seiscom), formerly doing business as United Geophysical Corporation, to recover property damages and general damages, including mental anguish and inconvenience, resulting from a trespass upon their land by a seismographic crew of Seiscom. Plaintiffs allege that Seiscom entered upon their land and conducted seismographic testing pursuant to an agreement with Samedan but without obtaining the prior consent of plaintiffs. The trial judge found that a trespass had occurred and rendered a judgment in favor of Mr. and Mrs. Ard and against defendants in solido for the sums of $17,500 and $12,500 respectively together with legal interest and costs. These amounts included awards for general damages and $250 for property damage. The court of appeal amended the judgment of the trial court to $5,250 by reducing the awards of general damages to Mr. and Mrs. Ard to $2,500 each and affirming the award of $250 for property damage. It reversed the judgment against Samedan. All costs of the appeal were assessed against Seiscom.[1] On application of plaintiffs, we granted certiorari to review the correctness of the court of appeal's decision to reduce the awards of general damages.[2]
The facts are not in dispute. Plaintiffs own 64.5 acres of land located about six miles from their residence in Montpelier, Louisiana. Approximately 75% of the property has been cleared and is used as a pasture for twenty-five cattle. The rest is *927 wooded area. The entire property is enclosed by barbed wire fencing and contains a stock pond, a peach orchard and a frame house that was being used for the storage of hay. At the time of the trespass, plaintiffs had executed an oil, gas and mineral lease with Samedan Oil Corporation whereby Samedan was granted the exclusive right to enter upon and use the property for mineral operations as set forth in the lease. Under the terms and conditions of the lease, Samedan had no right to authorize any party to enter upon or use plaintiffs' property for any purpose whatsoever without plaintiffs' permission.
On May 3, 1981, Mr. Ard was driven to his property by a friend, Paul Davis, in order to verify the delivery of some hay which Mr. Ard had previously purchased. He testified that he required the assistance of Mr. Davis because he had undergone heart surgery about ten months before and was not fully recovered. Upon his arrival at the main gate of the property, Mr. Ard noticed that the gate chain had been cut, a new lock had been installed and strips of two colors of plastic flagging tape were hanging from the gate. Mr. Ard and Mr. Davis discovered two employees of Seiscom on the premises; one was pumping water from the stock pond into a large tank-type vehicle and the other was drilling holes with a vehicle-mounted auger. Mr. Ard informed the men that they were trespassing and told them to leave. That evening or the next evening, Mr. Ard was contacted by a representative of Seiscom who admitted that its crew had drilled four holes on the property. Seiscom later sent him a check for $600. Mr. Ard refused to accept the check or sign the release enclosed with the check.
Shortly after May 3, plaintiffs received a telephone call from Mr. and Mrs. George, adjacent neighbors, who informed them that some of plaintiffs' cattle were trampling their shrubbery, soiling their lawn and eating the vegetables in their garden. Plaintiffs began receiving phone calls from other neighbors notifying them that their livestock was wandering near the highway or causing property damage similar to that suffered by Mr. and Mrs. George. Mr. Ard began making daily visits to his property in order to attempt to recapture his cattle. He testified that all he could do, due to his condition, was to stand by the gate and call in whatever cattle happened to be nearby. Mr. Ard noticed that some of the cattle previously captured were again at large. Charles Johnson, the grandson of Mr. and Mrs. George, testified that he was called out by his grandparents on three different occasions to repair the damages caused by plaintiffs' cattle. After investigating, he found that the fence between the properties had been rolled over and knocked down in several places in the wooded area of the property. Mr. Johnson discovered recently drilled holes and colored flagging on both properties. He immediately reported his findings to plaintiffs.
Mr. Ard returned to his property accompanied by his two foster children and found the fence to be down in four separate places in widths of about fifteen feet except for one larger gap of about thirty to forty feet. Mr. Ard, with the assistance of his children, spent almost a full day repairing the fence with barbed wire and poles. Even after the fence was repaired, it took approximately two more weeks to recapture the entire herd of cattle. Altogether, Mr. and Mrs. Ard spent a month attempting to recover the cattle, during which time they continued to receive telephone calls from neighbors on a daily basis and Mr. Ard continued to make daily visits to the property. Mr. Ard testified that he worried that his cattle would be stolen or that they would cause an accident on the highway. He was also humiliated and embarrassed by the fact that his cattle were causing damages to his neighbors' properties. He further testified that the incident exacerbated the physical problems he was still experiencing as a result of his heart surgery including swelling in his legs and neck. The situation aggravated him and *928 kept him from resting as he was supposed to do.
Mrs. Ard testified that she would receive sometimes two or three telephone calls a day informing her that the cattle were out. She was worried that the incident would aggravate and prolong her husband's physical and emotional recovery from his surgery. She was also upset by the fact that the cattle had damaged her neighbors' properties and she also worried that the cattle might cause an accident on the nearby highway.
At the outset, we note that the awards by the trial judge included $250 for property damage. The remainder of the $30,000 judgment was for general damages suffered by plaintiffs including mental and physical pain, anguish, distress and inconvenience lasting one month resulting from the trespass by Seiscom upon plaintiffs' property. We have recognized the right of one wronged by a trespass upon his property to recover for these general damages. Boswell v. Roy O. Martin Lumber Co., Inc., 363 So.2d 506 (La.1978); see also Beasley v. Mouton, 408 So.2d 446 (La.App. 1st Cir.1981); Loeblich v. Garnier, 113 So.2d 95 (La.App. 1st Cir.1959).
The courts of appeal have a constitutional duty to review the law and facts and thereafter render a judgment on quantum based on the merits, determining whether the trier of fact has abused its "much discretion" that the law accords it in awarding damages. La.Const. art. 5, § 10(B); La.Civ.Code art. 1999;[3]Carollo v. Wilson, 353 So.2d 249 (La.1977); Temple v. Liberty Mutual Ins. Co., 330 So.2d 891 (La.1976). Before an appellate court can disturb an award by a trial court, the record must clearly reflect that the trier of fact abused its discretion in making its award. In the event the appellate court finds from the record an abuse of discretion, the award may be disturbed by lowering (or raising) it to the highest (or lowest) point which is reasonably within the discretion afforded the trier of fact. Reck v. Stevens, 373 So.2d 498 (La.1979); Carollo v. Wilson, supra; Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). Accordingly, in the instant case, we must first examine the record to determine whether it reveals that the trial judge abused his discretion in his awards to Mr. and Mrs. Ard. If we find an abuse of discretion, the awards should be reduced to the maximum amounts which are reasonably within the discretion of the trial judge. Only then can we determine whether the court of appeal erred in making the reductions which it did.
A review of the record reveals that Seiscom willfully trespassed upon plaintiffs' property, conducted seismographic testing as evidenced by the drilling of four holes and destroyed plaintiffs' fencing in four places, thereby allowing plaintiffs' cattle to escape from the property. Mr. and Mrs. Ard experienced an unusual amount of anxiety and worry during the month that they were attempting to recapture the cattle. Additionally, Mr. Ard suffered physical pain as he was still recuperating from major heart surgery at the time of the trespass. Both Mr. and Mrs. Ard were humiliated, embarrassed and inconvenienced by the fact that their cattle were roaming the neighborhood and causing damages to their neighbors' properties. While recognizing that the actions of defendant caused substantial physical pain, mental anguish and inconvenience to plaintiffs, we find that an award of $29,750 in general damages to be an abuse of the trial judge's "much discretion." Therefore, we must reduce the award to the highest point which is reasonably within the discretion afforded the trier of fact. We consider awards of $10,000 and $7,500 respectively to Mr. and Mrs. Ard to be the maximum amounts that would compensate them for the general damages they sustained in addition to the award of $250 for property damage. Hence, we find that the court of *929 appeal erred in reducing the awards to Mr. and Mrs. Ard below these amounts.

DECREE
For the reasons assigned, the judgment of the court of appeal reducing the awards to Mr. Ard to $2,500 and to Mrs. Ard to $2,500 is amended by increasing the awards to $10,000 and $7,500 respectively. We affirm the award of $250 to plaintiffs for property damage and the reversal of the judgment of the trial court as to Samedan Oil Corporation. All costs are assessed against Seiscom Delta United Corporation.
BLANCHE, J., concurs and assigns reasons.
LEMMON, J., concurs.
BLANCHE, Justice (concurring).
With all due sympathy for the physical condition of the plaintiff, and for the trials and tribulations caused him by the trespass, this writer is of the opinion that the award given by the majority is still higher than the maximum amount that would have been in the discretion of the trial judge. I concur in the opinion because it serves fair notice on oil exploration companies that they cannot go onto property to search for oil without permission and escape the consequences. Furthermore, the destruction of the plaintiff's fences followed by a failure to repair them or to inform plaintiff of their destruction was a grevious act, and places the defendant in the worst category of trespassers.
NOTES
[1] 475 So.2d 384 (La.App. 1st Cir.1985).
[2] 478 So.2d 896 (La.1985).

Plaintiffs have stated in their application for writs and in their brief to this court that they are not contesting the reversal of liability against Samedan Oil Company by the court of appeal.
[3] Formerly La.Civ.Code art. 1934(3).